William MALDONADO, Plaintiff,

v.

William H. FLYNN et al., Defendants.

Court of Chancery of Delaware,
New Castle.

Submitted Jan. 11, 1980.
Decided March 18, 1980.

Irving Morris, and Joseph A. Rosenthal, Morris & Rosenthal, P. A., Wilmington, and Bruce E. Gerstein, and Sidney L. Garwin, Garwin & Bronzaft, New York City, for plaintiff.

Charles F. Richards, Jr., Richards, Layton & Finger, Wilmington, for individual defendants.

Robert K. Payson, Potter, Anderson & Corroon, Wilmington, for defendant Zapata Corp.

Thomas F. Curnin, Cahill Gordon & Reindel, New York City, special counsel to the Independent Investigative Committee of Zapata Corp.

HARTNETT, Vice Chancellor.

Plaintiff ("Maldonado") brought this stockholder's derivative action against Zapata Corporation ("Zapata") and individual defendants who are, or were, officers or directors of Zapata, alleging a breach of fiduciary duty by the individual defendants. Zapata now seeks, by motion, to compel the dismissal of this action as to all defendants because an ostensibly independent committee of the directors of Zapata, after this suit was commenced, concluded, in the exercise of business judgment, that the pendency of the suit was not in the best interests of Zapata. For the reasons discussed, I find that Zapata cannot compel the termination of this suit at this stage of the proceedings and the business judgment rule is irrelevant to that issue.

## I

The relevant facts, construed most favorably to Maldonado, show that in 1970 Zapata's board of directors adopted a stock option plan under which certain of Zapata's officers and directors were granted options to purchase Zapata common stock at $12.15 per share. The plan provided for the exercise of the options in five separate installments, the last of which was to occur on July 14, 1974. In 1971 this plan was ratified by Zapata's stockholders. As the date for the exercise of the final options grew near, however, Zapata was planning a tender offer for 2,300,000 of its own shares. Announcement of the tender offer was expected to be made just prior to July 14, 1974, and it was predicted that the effect of the announcement would be to increase the then market price of Zapata stock from $18–$19 per share to near the tender offer price of $25 per share.

Zapata's directors, most of whom were optionees under the 1970 plan, were aware that the optionees would incur substantial additional federal income tax liability if the options were exercised after the date of the tender offer announcement and that this additional liability could be avoided if the options were exercised prior to the announcement. This was so because the amount of capital gain for federal income tax purposes to the optionees would have been an amount equal to the difference between the $12.15 option price and the price on the date of the exercise of the option: $18–$19 if the options were exercised prior to the tender offer announcement, or nearly $25 if the options were exercised immediately after the announcement.

In order to reduce the amount of federal income tax liability the optionees would incur in exercising their options, Zapata's directors accelerated the date on which the options could be exercised to July 2, 1974. On that day the optionees exercised their options and the directors requested the New York Stock Exchange to suspend trading in Zapata shares pending "an important announcement". On July 8, 1974 Zapata an-

nounced the tender offer. The market price of Zapata stock promptly rose to $24.50.

In 1975 Maldonado brought this stockholder's derivative suit on behalf of Zapata and its stockholders, alleging that the actions of the directors of Zapata in accelerating the time for the exercise of their stock options constituted a breach of the fiduciary duty owed to Zapata and its stockholders by the directors. He claimed that the acceleration of the exercise date of the options deprived Zapata of a federal tax deduction in an amount equal to that saved by the optionees because the options were exercised on July 2, 1974, when the price of Zapata stock was $18.8125, rather than on July 14, 1974, when the price of Zapata stock was at or near $24.50. Defendants deny these allegations and also assert that, in any case, any resulting tax deduction for Zapata would have been minimal or nonexistent due to operating and capital loss carrybacks which were available to the corporation for income tax purposes.

In 1979, four years after this suit was commenced, Zapata's directors formed and appointed an Independent Investigative Committee ("the Committee") composed of two outside newly appointed directors who were ostensibly independent of management. The Committee was authorized to investigate the claims asserted in this and two companion actions in the federal courts and to take any course of action it deemed appropriate in view of its findings. After an investigation, the Committee determined that this litigation and the federal litigations were contrary to Zapata's best interests and instructed counsel for Zapata to seek dismissal of all the pending suits.

Pursuant to the Committee's directive, Zapata moved for dismissal of this action or in the alternative for summary judgment in its favor. In support of its motions Zapata asserts that a disinterested Committee of directors, appointed after a stockholder's derivative suit is filed on behalf of the corporation, can compel the dismissal of the suit when, in the Committee's business judgment, it concludes that discontinuance of the action is in the best interests of the corporation. Zapata also asserts that Maldonado has the burden to rebut the alleged independence and disinterest of the Committee. Maldonado disputes the independence of the Committee and its right to terminate this litigation. He also disagrees that he has any burden to show the lack of independence or disinterest of the Committee.

II

Zapata's argument in support of its motions is based on the well settled and salutary doctrine of corporate law that the board of directors of a corporation, as the repository of the power of corporate governance, is empowered to make the business decisions of the corporation. The directors, not the stockholders, are the managers of the business affairs of the corporation. 8 *Del.C.* § 141(a).

When stockholders are dissatisfied with a decision of the directors with respect to the corporation, their recourse is to bring a stockholder's derivative suit (that is, an action derived from the corporation). In the suit the corporation is named as a nominal defendant and is an indispensable party, *Levine v. Milton*, Del.Ch., 219 A.2d 145 (1966), but does not normally exercise control over the suit. *Slutzker v. Rieber*, N.J. Ch., 28 A.2d 528 (1942); *Solimine v. Hollander*, N.J.Ch., 19 A.2d 344 (1941).

When a stockholder's derivative suit, however, challenges the propriety of a decision of the directors, the business judgment rule protects the directors from liability by a presumption that the decision is proper. *Warshaw v. Calhoun*, Del.Supr., 221 A.2d 487 (1966). In order to overcome this presumption and successfully assail the directors' decision, the derivative plaintiff must first show facts which, if true, would remove the directors' decision from the protection of the rule, such as self-dealing, lack of good faith, failure to exercise due care, or the like. *Warshaw v. Calhoun*, supra.

Zapata cites these fundamental principles of corporate law and argues that a decision

to litigate a corporate right is solely within the directors' discretion and that even a decision not to continue a suit asserting the corporate right to prosecute a claim against the directors themselves, if made by disinterested directors acting in good faith and on reasonable inquiry, is protected by the business judgment rule and cannot be challenged by a stockholder. Applying its theory to the facts of the present case, Zapata argues that the Committee was independent; that the Committee's decision to seek dismissal of this action was a good faith exercise of business judgment; and that the Committee's decision is therefore binding on all of Zapata's stockholders and precludes Maldonado from further pursuing this suit.

Zapata, as will be seen, misconstrues the applicability of the business judgment rule. To ascertain why this is so, it is necessary to analyze the business judgment rule and nature of the derivative suit.

### III

The business judgment rule is a defensive rule, the effect of which is to permit corporate directors to exercise their discretion in managing the corporation's business affairs in the manner they deem in the corporation's best interests in accordance with their power to govern the corporation pursuant to 8 *Del.C.* § 141(a).[1]

In *Bodell v. General Gas & Elec. Corp.*, Del.Supr., 140 A. 264 (1927), the Delaware Supreme Court stated the broad outlines of business judgment rule:.

> If in the particular case there is nothing to show that the directors did not exercise their discretion for what they believed to be the best interest of the corporation, certainly an honest mistake of business judgment should not be reviewable by the court.

1. 8 *Del.C.* § 141(a) states:

(a) The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation. If any such provision is made in

See also, *Warshaw v. Calhoun*, supra; *Gimbel v. Signal Companies, Inc.*, Del.Ch., 316 A.2d 599 (1974); *Chasin v. Gluck*, Del.Ch., 282 A.2d 188 (1971); *Getty Oil Co. v. Skelly Oil Co.*, Del.Ch., 255 A.2d 717 (1969), rev'd., Del.Supr., 267 A.2d 883 (1970); *Davis v. Louisville Gas & Elec. Co.*, Del.Ch., 142 A. 654 (1928); FLETCHER, *Cyclopedia of Corporations*, § 1039.

The rule has been variously stated by Delaware Courts, at times perhaps overbroadly. ARSHT, *The Business Judgment Rule Revisited*, 8 Hofstra L.Rev. Pg. —— (1980). But its character as a purely defensive rule has never been seriously challenged. The rule, however, is not of universal application, nor without exception. It does not irrevocably shield all corporate transactions. *Gimbel v. Signal Companies, Inc.*, supra. It requires utmost loyalty to the corporation and its interests and does not protect fraudulent, illegal, or reckless decisions by the directors. *Guth v. Loft*, Del.Supr., 5 A.2d 503 (1939); *Kaplan v. Centex Corp.*, Del.Ch., 284 A.2d 119 (1971); *Chasin v. Gluck*, supra; *Marks v. Wolfson*, Del.Ch., 188 A.2d 680 (1963); *Alcott v. Hyman*, Del.Ch., 184 A.2d 90 (1962), aff'd., Del.Supr., 208 A.2d 501 (1965). And, of course, the rule has no application where there is a showing that the directors have profited at the expense of the corporation. *Gottlieb v. Heyden Chem. Corp.*, Del.Supr., 90 A.2d 660 (1952); *Glassberg v. Boyd*, Del. Ch., 116 A.2d 711, 719 (1955); FLETCHER, *Cyclopedia of Corporations*, § 1039.

Several recent federal courts have cited the business judgment rule as the basis for granting a motion to dismiss a stockholder derivative suit against a corporation and its directors when the corporate directors, or a committee thereof, in their collective business judgment, determined that the suit was not in the best interests of the corporation. *Lewis v. Anderson*, 9th Cir., 615 F.2d

the certificate of incorporation, the powers and duties conferred or imposed upon the board of directors by this chapter shall be exercised or performed to such extent and by such person or persons as shall be provided in the certificate of incorporation.

778 (1979) (applying California law); *Abbey v. Control Data Corp.*, 8th Cir., 603 F.2d 724, 728 (1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980) (applying Delaware law); *Lewis v. Adams*, N.D. Okl., C.A. No. 77–266C (Nov. 15, 1979) (applying Delaware law); *Siegal v. Merrick*, S.D.N.Y., 84 F.R.D. 106 (1979) (applying Delaware law); *Auerbach v. Bennett*, Ct. App., 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979) (applying New York law); cf: *Nussbacher v. Chase Manhattan Bank*, (*N. A.*), S.D.N.Y., 444 F.Supp. 973 (1978) (finding a lack of independence of the Committee). In *Lewis v. Anderson*, supra, the Ninth Circuit stated that *Abbey v. Control Data Corp.*, supra, and *Auerbach v. Bennett*, supra, "reflect a clear trend in corporate law, permitting the nominal corporate defendant to dismiss a stockholders' suit against the directors in the event a committee of disinterested directors determines, in accordance with the business judgment rule, that the suit should not be pursued."

■ All of these cited federal cases correctly state the business judgment rule, but incorrectly assume that State law necessarily enables the corporate directors (or a committee thereof) to compel the dismissal of a pending stockholder's derivative suit by invoking the business judgment rule. Although it is the law of the State of incorporation which determines whether the directors have this power of dismissal, *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1931, 60 L.Ed.2d 404 (1979), no Delaware Court has ever previously considered this issue, nor does any Delaware statute address the question. It is clear, however, that under well settled Delaware law, the directors cannot compel the dismissal of a pending stockholder's derivative suit which seeks redress for an apparent breach of fiduciary duty, by merely reviewing the suit and making a business judgment that it is not in the best interests of the corporation.

■ This is so because the business judgment rule is merely a presumption of propriety accorded decisions of corporate directors. *Bodell v. Gen. Gas & Elec.*, supra; *Warshaw v. Calhoun*, supra; *Prince v.*

*Bensinger*, Del.Ch., 244 A.2d 89 (1968); *Gropper v. North Central Texas Oil Co.*, Del.Ch., 114 A.2d 231 (1955). It provides a shield with which directors may oppose stockholders' attacks on the decisions made by them; but nothing in it grants any independent power to a corporate board of directors to terminate a derivative suit. The authority to terminate a derivative suit must be found—if at all—outside the rule.

■ Zapata propounds that corporate directors, as an incident of their power of corporate governance, have the authority to compel the dismissal of litigation brought on the corporation's behalf by a stockholder. In the cited federal cases, the courts assumed that proposition, and, having made that assumption, decided that the business judgment rule applied to the decision of independent directors to terminate the cause of action. This assumption ignores, however, the nature of a derivative suit. Its nature, not the existence of the business judgment rule, determines whether the directors of a Delaware corporation have the authority to prevent the stockholders from bringing or continuing a cause of action to enforce a corporate right of action against the corporate directors for breach of fiduciary duty, when the corporation refuses, explicitly or by implication, to bring the action. While the business judgment rule may protect the Committee of Independent Directors of Zapata from personal liability if they have made a good faith decision that this suit is not in the best interests of Zapata, and should be dismissed, an analysis of the character of a derivative suit shows that the business judgment rule is irrelevant to the question of whether the Committee has the authority to compel the dismissal of this suit.

IV

Zapata maintains that the right of a corporation to assert a cause of action belonging to it is inherent in the power of the directors to conduct the business affairs of the corporation; that this right of the corporation is primary; and that the right of the stockholders to derivatively assert the

corporate cause of action is always secondary to the primary corporate right. Zapata then concludes that, if the corporation has refused to bring suit on its cause of action for a breach of fiduciary duty by its directors, and a stockholder in a derivative suit asserts the claim on behalf of the corporation, the corporation still has the primary right to control the litigation. It cites in support of its conclusion *Hawes v. Oakland*, 104 U.S. 450, 26 L.Ed. 827 (1881), *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 454, 23 S.Ct. 157, 47 L.Ed. 256 (1902), *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), and *McKee v. Rogers*, Del.Ch., 156 A.. 191 (1931).

These cases, however, do not support Zapata's position. In *Hawes v. Oakland*, supra, a stockholder sought to compel the directors of his corporation to discontinue conduct with respect to a third person that the directors, in their business judgment, might reasonably have thought to be in the corporation's best interests. The stockholder made no allegation that the directors had breached their fiduciary duties to the corporation, or had otherwise acted beyond their authority. In its opinion the Court reviewed *Dodge v. Woolsey*, 59 U.S. (18 How.) 331, 15 L.Ed. 401 (1856), which permitted a stockholder to sue on behalf of the corporation to oppose the imposition of a tax where the corporation itself refused to sue, the *Dodge* Court having concluded that the directors' refusal to sue was beyond their authority and the action was thus properly brought by the stockholder. In *Hawes* the Court then concluded that the plaintiff therein had no standing to bring the action because he had alleged neither a breach of fiduciary duty nor an act by the directors beyond their authority, nor had he made a prior demand on the corporation before bringing suit.

In *Corbus v. Alaska Treadwell Gold Mining Co.*, supra, the Court concluded that the derivative plaintiff, suing to enjoin the collection of a tax from the corporation, had no standing to bring the action. Here again plaintiff made no allegation that the directors had breached any fiduciary duty or acted beyond their authority. Instead, the Court found, the plaintiff sought to secure derivatively an injunction the corporation itself could not obtain, and which no individual situated similarly to the corporation could obtain.

Although the Court states in *Corbus* that "[t]he directors may sometimes properly waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right," this statement is clearly subject to the holding in *Hawes v. Oakland*, supra, which construed *Dodge v. Woolsey*, supra. The *Hawes* opinion states in pertinent part:

We understand that doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity, in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit—

Some action, or threatened action, of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization;

Or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the interests of the other shareholders;

Or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity.

Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be jus-

tified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases. 104 U.S. 460, 26 L.Ed. 832.

*Corbus* also does not concern a derivative plaintiff's right to maintain a derivative action against corporate directors for breach of fiduciary duty since it involved an action seeking to enjoin the application of a tax to the corporation and alleged no wrongful act on the part of the directors.

Zapata also cites *Ashwander v. Tennessee Valley Authority* in support of its motions. That case involved derivative plaintiffs who, after proper demand, sought to prevent the sale by their corporation of certain assets to the TVA, a governmental corporation. The majority opinion of the Court stated:

Plaintiffs did not simply challenge the contract [between his corporation and the TVA] as improvidently made—as an unwise exercise of the discretion of the board of directors. They challenged the contract both as injurious to the interests of the corporation and as an illegal transaction—violating the fundamental law.

In seeking to prevent the carrying out of the contract, the suit was directed, not only against the Power Company, but against the Authority and its directors upon the ground that the latter, under color of the statute, were acting beyond the powers which the Congress could validly confer. In such a case it is not necessary for stockholders—when their corporation refuses to take suitable measures for its protection—to show that the managing board or trustees have acted with fraudulent intent or under legal duress. To entitle the complainants to equitable relief, in the absence of an adequate legal remedy, it is enough for them to show the breach of trust or duty involved in the injurious and illegal action. Nor is it necessary to show that the transaction was *ultra vires* the corporation. The illegality may be found in the lack of lawful authority on the part of those with whom the corporation is attempting to deal. 297 U.S. 318–319, 56 S.Ct. 470.

Zapata, however, relies on the language of Justice Brandeis in his concurring (and thus non-binding) opinion where he states:

Within recognized limits, stockholders may invoke the judicial remedy to enjoin acts of the management which threaten their property interest. But they cannot secure the aid of a court to correct what appear to them to be mistakes of judgment on the part of the officers. Courts may not interfere with the management of the corporation, unless there is bad faith, disregard of the relative rights of its members, or other action seriously threatening their property rights. This rule applies whether the mistake is due to error of fact or of law, or merely to bad business judgment. It applies, among other things, where the mistake alleged is the refusal to assert a seemingly clear cause of action, or the compromise of it. *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 263, 264, 37 S.Ct. 509, 61 L.Ed. 1119. If a stockholder could compel the officers to enforce every legal right, courts, instead of chosen officers, would be the arbiters of the corporation's fate.

Zapata, in citing Justice Brandeis, however, ignores the gravamen of Maldonado's suit. Maldonado's complaint does not attack as improper the 1979 decision of the Committee to seek the dismissal of this litigation, which was probably an exercise of business judgment, although it was irrelevant to the dismissal issue now before me. Rather, Maldonado is attacking the 1974 decision of the directors to accelerate the option dates as being in bad faith or in breach of the directors' fiduciary duties. Although it is not necessary at this time to decide the issue, the 1974 decision to accelerate the options may not be entitled to the protection of the business judgment rule because the directors had a personal interest in that decision. And in any event *United Copper Securities Co. v. Amalgamated Copper Co.*, cited by Justice Brandeis, stands only for the proposition that a stockholder may not bring derivatively an action at law belonging to the corporation against an extracor-

porate defendant where no allegation has been made that the directors of the corporation acted improperly.

Finally, although Zapata cites *McKee v. Rogers*, supra, for the statement that "a stockholder cannot be permitted as a general rule to invade the discretionary field committed to the judgment of the directors and sue on the corporation's behalf when the managing body refuses," a scrutiny of that case shows that it did not involve any breach of fiduciary duty but instead sought collection of a foreign judgment. Chancellor Wolcott stated:

> This is a derivative suit, not to redress the wrongs there complained of [alleged breaches of fiduciary duty by the corporation's former president], but to collect a judgment there obtained. Property is located here which the complainant wants seized in satisfaction of the corporation's judgment. It is a suit in short of a foreign judgment, which happens to fall in a court in equity only because the corporation will not prosecute it in a court of law in its own name. 156 A. 191, 193.

*McKee*, therefore, must be read in view of the nature of the case, and in that light, does not place a disability on Maldonado who has alleged a breach of fiduciary duty. And, of course, although the Chancellor stated in *McKee* that the stockholder should not generally invade the discretionary field of the directors, he found that the stockholder was entitled to bring that action on behalf of the corporation, pointing out that:

> [A] stockholder may sue in equity in his derivative right to assert a cause of action in behalf of the corporation, without prior demand upon the directors to sue, when it is apparent that a demand would be futile, that the officers are under an inference that sterilizes discretion and could not be proper persons to conduct the litigation.

The cases cited by Zapata, therefore, do not support its contention that a stockholder's right to sue is always secondary and subordinate to that of the corporation, and is therefore subject to a cor-

porate power to preempt its continuance. They show, instead, that a stockholder may be denied the right to assert on behalf of his corporation a corporate right of action when he has failed to make a proper demand; *Hawes v. Oakland*, supra; if, of course, one is necessary; *McKee v. Rogers*, supra; or where he seeks to assert a right not legally assertable by his corporation, *Corbus v. Alaska Treadwell Gold Mining Co.*, supra; or where the purportedly derivative action asserts a purely legal cause of action against an extracorporate party without any allegation that the directors have acted improperly. *United Copper Securities Co. v. Amalgamated Copper Co.*, supra. In fact *Dodge v. Woolsey* clearly implies the existence of Maldonado's right to pursue the present cause of action.

The law of Delaware is in accord. The right of a stockholder to sue derivatively and independently of the corporation in the event the corporation refuses to sue is described in the case of *Sohland v. Baker*, Del.Supr., 141 A. 277 (1927). That case involved a prayer for the cancellation of stock issued and an accounting for the dividends paid on the stock. The derivative plaintiff made a demand for suit on the corporation, which was refused. He then filed an action on behalf of the corporation alleging as his cause of action the corporate right. Defendants questioned plaintiff's right to maintain the suit. The Delaware Supreme Court stated:

> As a general rule, a cause of action belonging to a corporation can be asserted only by such corporation by a suit in the corporate name. Conditions may, however, exist in a court of equity whereby a stockholder may sue in his own name for the purpose of enforcing corporate rights, though the corporation in question is nominally a party defendant. This is true in a proper case if the corporation on the demand of the stockholder refuses to bring suit.
>
> \*    \*    \*    \*    \*    \*
>
> The right of a stockholder to file a bill to litigate corporate rights is, therefore, solely for the purpose of preventing in-

justice, where it is apparent that material corporate rights would not otherwise be protected. *Pomeroy's Equity Jurisprudence*, Vol. 3 § 1095. But whether such right exists necessarily depends upon the facts of each particular case. *Corbus v. Gold Mining Co.*, [sic] 187 U.S. 455, 23 S.Ct. 157, 47 L.Ed. 256.

In order, however, for a stockholder to supersede the directors in their right to determine whether a corporation shall bring suit in a particular case, the Supreme Court of the United States, in the leading case of *Hawes v. Oakland*, 104 U.S. 450, 460, 26 L.Ed. 827, said:

"But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court."

\*    \*    \*    \*    \*    \*

While the conclusion may be drawn that the corporate management was not hostile to action by the complainant, the fact, nevertheless, remains that the corporation itself refused to litigate an apparent corporate right.

*The reasons for such refusal need not be considered. The corporation, having refused to institute proceedings, the only way that its rights could be brought before the court was by a bill filed by a stockholder. That the complainant, for the prevention of injustice, therefore, had the right to file the bill in the court below, seems clear.* (emphasis added) 141 A. 281–282.

The holding in *Sohland v. Baker*, a case not cited by the parties, standing alone is probably sufficient grounds to deny Zapata's motions, but it may be useful to examine the history and nature of the derivative suit to see why this is so.

■ The stockholder's derivative suit was created in equity in the first half of the nineteenth century. Its initial purpose was to provide the stockholder a right to call to account his directors for their management of the corporation, analogous to the right of a trust beneficiary to call his trustee to account for the management of the trust corpus. The stockholder's right was therefore individual, although the interest he sought to protect was primarily that of the corporation and only indirectly his own. The stockholder's right to sue was subsequently expanded, during the latter half of the nineteenth century, to permit him to bring suit in limited circumstances against third parties on the corporation's cause of action, when the directors refused to sue. *Dodge v. Woolsey*, supra. This expansion of the stockholder's right went beyond the trust analogy on which the right was originally predicated but the right to assert the corporate cause of action remained individual. See, PRUNTY, *The Stockholders' Derivative Suit: Notes on its Derivation*, 32 N.Y.U.L. Rev. 980 (1957).

■ The historical evolution of the derivative suit therefore gives it a dual aspect, the nature of which is mostly cogently expressed by Chancellor Wolcott in *Cantor v. Sachs*, Del.Ch., 162 A. 73, 76 (1932):

A bill filed by stockholders in their derivative right therefore has two phases—one is the equivalent of a suit to compel the corporation to sue, and the other is the suit by the corporation, asserted by the stockholders in its behalf, against those liable to it. The former belongs to the complaining stockholders; the latter to the corporation. The complaining stockholders are allowed in derivative bills to bring forward these two causes of action in one suit. But any recovery granted by the decree necessarily is in favor of the corporation. The complaining stockholders secure nothing

to themselves as individuals, beyond the mere right, which is inherent in the decree for relief to the corporation, of compelling their recalcitrant corporation to accept the relief which the decree affords.

See also: FOLK, *The Delaware General Corporation Law*, § 327, and FLETCHER, *Cyclopedia of Corporations*, § 5941.1.

■ The dual nature of the derivative suit has been continuously recognized in Delaware. *Mayer v. Adams*, Del.Supr., 141 A.2d 458, 461–462 (1958); *Harff v. Kerkorian*, Del.Ch., 324 A.2d 215, 218 (1974), *modified on other grounds*, Del.Supr., 347 A.2d 133 (1975); *Taormina v. Taormina Corp.*, Del.Ch., 78 A.2d 473 (1951). It is this dual nature of the derivative suit which denies the corporation the right to compel the dismissal of a properly brought stockholder's derivative action, because the stockholder asserts in the suit not only a right belonging to the corporation but also a right individual to himself.

■ The stockholder's individual right to bring the action does not ripen, however, until he has made a demand on the corporation which has been met with a refusal by the corporation to assert its cause of action or unless he can show a demand to be futile. The purpose of a pre-suit demand is only to require the stockholder to show that he has good cause to depart from the policy that the directors are normally the persons to control the corporation, and the ones who should ordinarily bring and dismiss litigation on its behalf. Its purpose is not to entirely deny the stockholder the right to redress a breach of fiduciary duty to the corporation. Recognizing this policy, the Courts have therefore imposed a prerequisite to the right of the stockholder to sue to enforce a claim belonging to his corporation:

> [The] stockholder has no right to file a bill in the corporation's behalf unless he has first made demand on the corporation that it bring the suit and the demand has been answered by a refusal, or unless the circumstances are such that because of the relation of the responsible officers of the corporation to the alleged wrongs, a demand would be obviously futile or, if complied with, it is apparent that the officers are not the proper persons to conduct the litigation.

*Ainscow v. Sanitary Co. of America*, Del. Ch., 180 A. 614, 615 (1935). See also, *Mayer v. Adams*, supra; *Dann v. Chrysler Corp.*, Del.Ch., 174 A.2d 696 (1961); Chancery Rule 23.1.

■ Therefore, once a stockholder, who asserts a proper cause, has made a demand on the corporation and has met with refusal, he may assert his individual right and the corporate right together in a derivative suit, and the corporation no longer controls the corporate right to which the plaintiff's individual right attaches. *Sohland v. Baker*, supra. In the present case, since Zapata has refused to bring suit against its directors for an apparent breach of fiduciary duty to it, it can no longer control the destiny of this suit and cannot compel the dismissal of this action at this stage of the proceedings.

The motions of Zapata to dismiss or alternatively for summary judgment must therefore be denied.

### V

In summary, an analysis of the business judgment rule shows that while it is a limitation on liability and ordinarily protects corporate directors when they, in good faith, decide not to pursue a remedy on behalf of the corporation, it is not an independent grant of authority to the directors to dismiss derivative suits. Under settled Delaware law the directors do not have the right to compel the dismissal of a derivative suit brought by a stockholder to rectify an apparent breach of fiduciary duty by the directors to the corporation and its stockholders after the directors have refused to institute legal proceedings, because the stockholder then possesses an independent right to redress the wrong.

The individual right of the stockholder to protect his interests and the interests of his corporation by bringing a derivative suit

against the directors of the corporation for breach of fiduciary duty is not diminished because the suit may be commenced by the stockholder only if the corporation will not assert the right. The stockholder's right to litigate is secondary to the corporate right to bring suit only for so long as the corporation has not decided to refuse to bring suit. Once the corporation refuses, or impliedly refuses, to assert an apparently valid claim, involving a breach of fiduciary duty by the corporate directors, the stockholder is vested with a primary and independent right to redress the wrong by bringing a derivative suit.

In the present case, Zapata has refused to assert its own cause of action against its directors and officers for an apparent breach of fiduciary duty to it and therefore does not now have control over the conduct of this litigation. It therefore cannot compel a dismissal of this action on the present record and thereby prevent the aggrieved stockholders from asserting their individual right to pursue the corporate right.

▆ The right of a court to review the charges and to determine if the complaining stockholders have a cause of action does not conflict with the business judgment rule because that rule is irrelevant to the issue of whether the stockholders have an independent right to bring an action on behalf of the corporation to rectify a breach of fiduciary duty where the corporation itself refuses to act, nor does the business judgment rule always preclude a judicial inquiry. See *Cramer v. Gen. Tel. & Elec. Corp.*, 3rd Cir., 582 F.2d 259 (1978).

▆ Under our system of law, courts and not litigants should decide the merits of litigation. Aggrieved stockholders of Delaware corporations ought to be able to expect that an impartial tribunal, and not a committee appointed by the alleged wrongdoers, will decide whether a stockholder's derivative suit alleging breach of fiduciary

duty has any merit. See *Galef v. Alexander*, 2nd Cir., 615 F.2d 51 (1980); *Groel v. United Electric Co. of N. J.*, N.J.Ch., 61 A. 1061 (1905).

▆ This decision, of course, is limited to the issue of whether a Board of Directors or its Committee may compel the dismissal of a derivative suit without a judicial scrutiny of the allegations of breach of fiduciary duty set forth in the Complaint. It has not been necessary to consider whether the directors of Zapata acted improperly in 1974, or are entitled to any of the protections offered by the business judgment rule; nor has it been necessary to consider the issue of the burden of proof as to the independence of the Committee. Even, however, if the business judgment rule were relevant to the dismissal issue decided here, it would seem that, under current concepts of fairness and fiduciary duty, directors who are made defendants in a stockholder's derivative suit, because they approved a transaction in which they had a self-interest, and who then seek a dismissal of the suit by appointing an Independent Committee to decide whether the suit should continue, should, at least, bear the burden of showing the independence of their Committee. See *Singer v. Magnavox Co.*, Del.Supr., 380 A.2d 969 (1977); *Roland International Corp. v. Najjar*, Del.Supr., 407 A.2d 1032 (1979); *Cramer v. Gen. Tel. & Electronics Corp.*, 3rd Cir., 582 F.2d 259 at 275 (1978).[2]

---

**2.** After the motions decided herein were argued, defendants attempted to make a supplemental argument predicated on the doctrine of res judicata because of certain recent developments in companion cases in the federal courts.

This defense was not considered in this opinion. Leave has been granted to defendants, however, to pursue this argument in a separate motion.