William MALDONADO, Plaintiff,

v.

William H. FLYNN et al., Defendants.

Court of Chancery of Delaware,
New Castle County.

Submitted Feb. 27, 1980.

Decided May 29, 1980.

Irving Morris and Joseph A. Rosenthal, Morris & Rosenthal, P.A., Wilmington, Del., and Bruce E. Gerstein and Sidney L. Garwin, Garwin & Bronzaft, New York City, for plaintiff.

Charles F. Richards, Jr., Richards, Layton & Finger, Wilmington, Del., for individual defendants.

Robert K. Payson, Potter, Anderson & Corroon, Wilmington, Del., for defendant Zapata Corp.

Thomas F. Curnin, Cahill, Gordon & Reindel, New York City, special counsel to the Independent Investigative Committee of Zapata Corp.

HARTNETT, Vice Chancellor.

## I

Defendant Zapata Corporation ("Zapata"), asserting the doctrine of *res judicata* ("the matter is settled by a judgment"), moved to dismiss this action, claiming that a final judgment of the U. S. District Court for the Southern District of New York ("U. S. District Court") dismissing a companion action, *Maldonado v. Flynn*, 485 F.Supp. 274 (1980) is binding as to all issues pending in this Court, even though the U. S. District Court did not consider the merits of the issues pending in this Court. Zapata urges that plaintiff ("Maldonado") should have presented the issues in the present case to the U. S. District Court pursuant to the District Court's pendent jurisdiction, and because he did not, he is precluded from asserting them here. For the reasons set forth, I hold that the failure of Maldonado to present all of his theories of recovery in the prior District Court case, which arose out of the same transaction which is the subject of this litigation, precludes his assertion of these theories in this case, if the District Court judgment dismissing his claims is not overturned on appeal.

The action in this Court is a stockholder's derivative suit brought by Maldonado against Zapata and certain of its officers and directors in 1975 alleging wrongs to the corporation which occurred in 1974 because of transactions between the corporation and some of its directors. Maldonado asserts, in the present action, a breach of fiduciary duty arising from the common law. A more detailed statement of fact appears in *Maldonado v. Flynn*, Del.Ch., 413 A.2d 1251 (1980).

During the pendency of this action Maldonado brought suit in the U. S. District Court against the same defendants, with the exception of Rene R. Wolcott, a director of Zapata who is a defendant in this action, but not in the District Court action. The federal action asserted claims under the Securities and Exchange Act of 1934 based on alleged violations of § 10(b), 15 U.S.C. § 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5; § 14(a), 15 U.S.C. § 78n(a); Rule 14a–9, 17 C.F.R. § 240.14a–9; and § 7, 15 U.S.C. § 78g. Maldonado also asserted in the federal action, as pendent to his securities law violation claims, the common law claims asserted in this Court. The U. S. District Court dismissed Maldonado's securities law claims under Rule 12(b)(6), *Fed.R.Civ.P.*, and, there then being no federal claims to which the common law claims were pendent, also dismissed the common law claims. *Maldonado v. Flynn*, 448 F.Supp. 1032 (S.D. N.Y.1978). On appeal the Second Circuit reversed the U. S. District Court's dismissal of Maldonado's § 14(a) claim and affirmed the dismissal of his § 10(b) claim. The cause was remanded to the District Court for an evidentiary hearing with respect to the § 14(a) claim, with specific instructions to the District Court to determine whether to exercise its discretionary pendent jurisdiction over the common law claims in view of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and the posture of Maldonado's case in this Court. *Maldonado v. Flynn*, 597 F.2d 789, 798 (2d Cir. 1979).

Prior to any determination by the U. S. District Court of whether to exercise pendent jurisdiction over the common law claims, Maldonado amended his complaint to delete those claims. The amendment left the case just as if the claims had never been asserted in the District Court, thus mooting the issue of pendent jurisdiction. Zapata subsequently moved for summary judgment in the District Court on the theory that the directors of a nominal corporate defendant in a stockholder's derivative action may compel the dismissal of a stockholder's suit when an independent and disinterested Committee of its directors, in the collective business judgment of its members, determines that the litigation is not in the corporation's best interests. The District Court, applying what it believed to be Delaware law, accepted Zapata's arguments, found

that the Committee established by Zapata was independent and disinterested, and dismissed the suit without reaching the merits of the § 14(a) violation claim. *Maldonado v. Flynn*, 485 F.Supp. 274, 77 (1980). However, on March 18, 1980, in this action, without considering the question of *res judicata*, I denied an identical motion for summary judgment brought by Zapata and ruled that under Delaware law an independent and disinterested committee of Zapata's directors did not have the legal power to compel dismissal of this action. I therefore, in effect, found that the ruling of the District Court was an incorrect application of Delaware law. *Maldonado v. Flynn*, Del. Ch., 413 A.2d 1251 (1980). Both decisions are now on appeal.

Zapata, nevertheless, contends that the doctrine of *res judicata* bars those issues, claims or theories of recovery asserted in this case if they could have been asserted in the U. S. District Court. It urges that, under *United Mine Workers v. Gibbs*, supra, the District Court clearly had the power to accept pendent jurisdiction over Maldonado's common law claims, and therefore *res judicata* operates to bar the assertion of these common law claims in this Court even if they were never raised, or were amended out of the federal complaint.

## II

■ In *Epstein v. Chatham Park, Inc.*, Del.Super., 153 A.2d 180 at 184 (1959), Justice Wolcott, sitting in Superior Court, described the doctrine of *res judicata* in general terms:

The doctrine of *res judicata*, briefly stated, is that a final judgment upon the merits rendered by a court of competent jurisdiction may, in the absence of fraud or collusion, be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies.

The doctrine is judicially-created and is based on public policy requiring a definite end to litigation. It has particular vitality in our federal system of overlapping federal and state subject-matter jurisdiction be-

cause, in many cases, a plaintiff has at least two courts, one federal and one state, where he may choose to assert a claim. The doctrine of *res judicata* exists for many reasons, but among the most important are to prevent vexatious litigation and to promote the stability and finality of judicial decrees. *Epstein v. Chatham Park, Inc.*, supra; *Coca-Cola Co. v. Pepsi-Cola Co.*, Del. Super., 172 A. 260, 262 (1934). The doctrine permits a litigant to press his claims but once, and requires him to be bound by the determination of the forum he has chosen, so that he "may have one day in court but not two." *Malone Freight Lines, Inc. v. Johnson Motor Lines, Inc.*, Del.Supr., 148 A.2d 770, 775 (1959).

■ In earlier times the doctrine of *res judicata* could be invoked only to bar the relitigation of the same cause of action already litigated and determined. *Tusso v. Smith*, Del.Ch., 156 A.2d 783 (1959); *Ajax Rubber Co. v. Gam*, Del.Super., 130 A. 395 (1925). This limitation was due in large part to the formal, rigid and technical rules of pleading then existing and the difficulty of amending pleadings. *Restatement (Second) of Judgments* § 61, Comment (a) (Tent. Draft No. 5, 1978). The modern transactional view of the doctrine of *res judicata*, however, does not require that the claim subsequently asserted be based on a same cause of action to be barred, but permits the doctrine to be invoked to bar litigation between the same parties if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication. *Ezzes v. Ackerman*, Del.Supr., 234 A.2d 444 (1967); *Steigman v. Beery*, Del.Ch., 203 A.2d 463 (1964); *Epstein v. Chatham Park, Inc.*, supra. The determination, therefore, whether the doctrine shall be invoked is now based on the underlying transaction and not on the substantive legal theories or types of relief which are sought. Under the modern rule, ordinarily, a transaction gives rise to only one claim regardless of the number of ways that the claim may be asserted. *Restatement (Second) of Judgments* § 61, Comments (b) & (c) (Tent. Draft No. 5, 1978).

In deciding whether *res judicata* will bar this suit, Maldonado's claim must therefore be analyzed in the light of the transaction which he challenges; and, if his complaint in the U. S. District Court and his complaint in this Court assert different substantive theories concerning but one claim arising from but one transaction, the doctrine of *res judicata* may prohibit a second adjudication here.

The transaction giving rise to plaintiff's claim in the U. S. District Court was described by that Court at 448 F.Supp. 1034–1035:

> Plaintiff's claims center about a stock option plan (the "plan") established in 1970 for key employees of Zapata and its subsidiaries, and certain modifications to that plan made by the Corporation's board of directors in July 1974 immediately prior to announcing a tender offer by the Corporation for its own shares. Under the original plan, which Zapata's shareholders approved on January 11, 1971, the price per share upon exercise of an option was $12.15, purchase could be made only for cash, and the options would be exercisable at five stages: 20% ninety days after the date the options were granted—July 14, 1970—and an additional 20% on each of the next four successive anniversaries of the date of grant. Thus the last option exercise date was July 14, 1974.
>
> \* \* \* \* \* \*
>
> On July 2, 1974, following the opening of the New York Stock Exchange, trading in Zapata stock was suspended upon the request of Zapata management pending a future announcement of the tender offer. When trading was halted, the price per share was approximately $18.50.
>
> Later that day, July 2, a meeting of Zapata's board was held . . . [at which] the board also voted to accelerate the exercise date of the final 20% of the options from July 14 to July 2, 1974.
>
> \* \* \* \* \* \*
>
> On the following day, July 3, the board formally approved the tender offer, which was announced on July 8, when trading of the stock was resumed on the Exchange. The closing price for the shares on that day was $24.50 per share. When as already noted, the officer-directors and other officers exercised their options on July 2, 1974 and the exercise thereunder of their options by the officer-directors and others, plaintiff asserts three claims under the Exchange Act in addition to a basic common law claim for waste of corporate assets—violations of Section 10(b) and Rule 10b–5, of Section 14(a) and Rule 14a–9 and Section 7. (Footnotes omitted.)

The transaction there described is clearly the same as that giving rise to the claim Maldonado asserts in this Court. Cf. *Maldonado v. Flynn*, Del.Ch., 413 A.2d 1251 (March 18, 1980). Since the claim asserted in the District Court, transactionally defined, is identical to the claim asserted in this Court, even though the substantive theory of recovery asserted by Maldonado in the two courts is different, the claim has been split and must be dismissed in this Court, unless there was a valid reason for the splitting. *Coca-Cola Co. v. Pepsi-Cola Co.*, supra; *Restatement (Second) of Judgments* § 61; 1B *Moore's Federal Practice* ¶ 0.410[2]; 46 Am.Jur.2d, *Judgments* § 405; 1 C.J.S. *Actions* § 102. The rule against claim splitting is an aspect of the doctrine of *res judicata* and is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times. Thus, where a plaintiff has had a "full, free and untrammelled opportunity to present his facts," but has neglected to present some of them or has failed to assert claims which should in fairness have been asserted, he will ordinarily be precluded by the doctrine of *res judicata* from subsequently pressing his omitted claim in a subsequent action. *Coca-Cola Co. v. Pepsi-Cola Co.*, supra.

## III

The rule against claim splitting cannot, however, entirely deny a plaintiff an opportunity to present his facts and theory of recovery. Therefore, where it appears that a plaintiff could not for jurisdictional reasons have presented his claim in its entirety in a prior adjudication, the rule against claim splitting will not be applied to bar this claim. *Restatement (Second) of Judgments* § 61.2(1)(c), Comment c(1) and Reporters' Note at 201 (Tent. Draft No. 5, 1978). The question of whether a plaintiff has impermissibly split his claim is therefore dependent on whether he was able to present it, in its entirety, in the prior forum; which must be determined from an examination of the jurisdiction of the prior forum.

Although Maldonado's common law theory of recovery would not ordinarily have been cognizable in the U. S. District Court, because of lack of subject matter jurisdiction of the federal court, the District Court could have exercised discretionary jurisdiction over the claim if there had been a transactionally-related federal claim to which the state claim was pendent. The judicial power to exercise this type of jurisdiction was defined in *United Mine Workers v. Gibbs*, supra:

Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority * * *,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin*, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be ex-

pected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

Maldonado's common law claims and his securities law violation claims arise from the same transaction, and therefore, as stated in *Gibbs*, "derive from a common nucleus of operative fact." Maldonado could, therefore, have presented his common law theories of recovery in the same action as that in which he sought to present his securities law violation theories of recovery, and the District Court could have exercised its discretionary judicial power to hear as pendent claims, the claims based on state common law. *United Mine Workers v. Gibbs*, supra. It is clear, that if a plaintiff can present his state claims in a prior federal action by use of pendent jurisdiction and he chooses not to present them in the federal court, the doctrine of *res judicata* will bar his later assertion of the same claims in a state forum. *Woods Exploration & Pro. Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1315–1316 (5th Cir., 1971); *Ford Motor Co. v. Superior Court*, Cal.App., 35 Cal.App.3d 676, 110 Cal.Rptr. 59, 61–62 (1973); *Salwen Paper Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, App.Div., 72 A.D.2d 385, 424 N.Y.S.2d 918 (1980); *McCann v. Whitney*, N.Y.Supr., 25 N.Y.S.2d 354, 357 (1941); *Belliston v. Texaco, Inc.*, Utah Supr., 521 P.2d 379, 381–382 (1974); Note, *Problems of Parallel State and Federal Remedies*, 71 Harv. L.Rev. 513 (1958); *Restatement (Second) of Judgments* § 61.1, Comment e, Illustration 10 and Reporter's Note at 178–179 (Tent. Draft No. 5, 1978); Wright, Miller & Cooper: *Federal Practice and Procedure*, Jurisdiction, § 4226 (1978).

## IV

When a defendant claims that the doctrine of *res judicata* bars the subsequent action, he must show that all the elements of *res judicata* exist; that the same transaction forms the basis for the prior and subsequent suits; and that the claim for relief could have been properly presented in the prior action. Upon such a showing, the plaintiff to prevent dismissal

must then show that there was some impediment to the presentation of his entire claim for relief in the prior forum. If it appears that in the prior adjudication a U. S. District Court would not have had subject matter jurisdiction unless it assumed pendent jurisdiction, a plaintiff must show that the federal court refused, or would have refused, to exercise its discretionary pendent jurisdiction. Thus,

> [I]f in a given case it is clear that a federal court, applying the criteria elaborated in [*United Mine Workers v.*] *Gibbs*, would not have entertained the state theory, the state action should not be barred. But in cases of doubt, it is appropriate for the rules of res judicata to compel the plaintiff to bring forward his state theories in the federal action, in order to make it possible to resolve the entire controversy in a single lawsuit.

*Restatement (Second) of Judgments* § 61.1, Reporter's Note at 179 (Tent. Draft No. 5, 1978). This burden is placed upon a plaintiff because he is the only party who can assert or withhold, at will, his various theories of recovery in the District Court. Only he can place the District Court in a position to decide whether to exercise its discretionary pendent jurisdiction. The public policy against claim splitting, therefore, requires that a plaintiff plead all his theories of recovery in a federal court, thus forcing the Court to accept or reject pendent jurisdiction. If a plaintiff splits his claim and saves a theory of recovery for another forum, he assumes the risk that he will not be able to present it in the other forum because the first adjudication will be *res judicata* to all subsequent litigation.

■ Maldonado has not shown that he could not have presented his entire claim in the U. S. District Court or that, had he presented his entire claim, the District Court would have refused to entertain pendent jurisdiction over the state law claims in the federal action, Maldonado has therefore failed to show that a sufficient barrier existed in the federal action to prevent the assertion of his entire claim. He has also failed to show that he amended the state common law claims out of his federal complaint because the District Court indicated, or even hinted, that it would decline to exercise pendent jurisdiction. He has, at most, shown that the District Court assented to his amendment after he proposed it of his own volition. This is not sufficient.

I therefore find that Maldonado's claim in this Court and in the U. S. District Court arise out of the same transaction; that the District Court could have exercised pendent jurisdiction over the claims asserted here; and that Maldonado has failed to show that he could not have presented the entire controversy to the District Court for its determination. He therefore impermissibly split his claim and the final adjudication of dismissal in the District Court precludes his prosecution of his common law theory of recovery in this Court.

■ The U. S. District Court judgment is, however, now on appeal to the Second Circuit Court of Appeals. If the District Court's order is reversed it obviously can have no *res judicata* effect because there will be no adverse final judgment. *Woods Exploration & Pro. Co. v. Aluminum Co. of America*, 5th Cir., 438 F.2d 1286, 1316 (1971); 1B MOORE'S FEDERAL PRACTICE, ¶ 0.409[1]. Courts differ over whether a final judgment which is being appealed will support the application of the doctrine of *res judicata*. See *Epstein v. Chatham Park, Inc.*, Del.Super., 153 A.2d 180 (1959). The better view is that a judgment being appealed will support the application of the doctrine of *res judicata* but, in an appropriate case, the dismissal of the second action should be held in abeyance until the appeal of the first action is completed. *Restatement (Second) of Judgments* § 41, Comment (f), Reporter's Note at 10–12 (Tent. Draft No. 1, 1973). I therefore stay any further proceedings in this action until the pending appeal of the District Court's judgment is completed. If the action of the District Court dismissing Maldonado's suit is ultimately upheld, an order dismissing the present action, based on *res judicata*, will be entered. If the District Court is reversed, an order will be entered denying Zapata's motion to dismiss.

If the result here seems harsh in view of my March 18, 1980, ruling that Zapata does not have the power under Delaware law to compel the dismissal of a stockholder's derivative suit by relying on the business judgment rule, it should be remembered that sound public policy mandates but one trial for one claim. Maldonado has already once argued and lost in the District Court on the issue of whether Zapata's Board of Directors may compel the dismissal of his claims. He assumed the risk of inconsistent adjudications when he, by his own strategy, elected to commence two actions, one here and one in the U. S. District Court, and then decided to amend out of his federal complaint his pendent common law theory of recovery. Since he created this risk it is entirely proper that he bear its burdens.