James **GELLER** and Bonnie Geller, Objectors to the Settlement Below, Appellants,

v.

Harriette **TABAS,** Lee **Rappaport** and Fran Rappaport, Beverlee Goldberg, Custodian for Jeffrey L. Goldberg, Morton B. Wapner, Isabel C. Heffler and Joseph H. Levit, Plaintiffs Below, Appellees,

v.

James M. **CROSBY,** John F. Crosby, Jr., William M. Crosby, I.G. Davis, Jr., David F. Edwards, John C. Miller and Henry B. Murphy, Defendants Below, Appellees,

and

Resorts International, Inc., Nominal Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: March 16, 1983.

Decided: May 25, 1983.

David R. Simon (argued), and Gary M. Lanzara, of Simon & Allen, Newark, Joshua M. Twilley and Peter S. Feliceangeli of Twilley, Jones & Feliceangeli, Dover, for objectors-appellants.

William Prickett (argued), of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiffs-appellees.

Januar D. Bove (argued), and Henry E. Gallagher, Jr. of Connolly, Bove & Lodge, Wilmington, for individual defendants-appellees.

Donald J. Wolfe, Jr. (argued), and Michael D. Goldman of Potter, Anderson & Corroon, Wilmington, for nominal defendant-appellee Resorts Intern., Inc.

Before HERRMANN, C.J., McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

This is an appeal by Objectors below, James and Bonnie Geller (Objectors) from the July 26, 1982 Order and Final Judgment of the Court of Chancery, approving the settlement of a class and derivative suit action brought on behalf of Resorts International, Inc., a Delaware corporation (Resorts).

Objectors' first argument in support of their appeal is that the notice of the proposed settlement which was sent to Resorts' stockholders pursuant to Chancery Court Rules 23(e) and 23.1 violated due process. Objectors contend that the notice did not give full and fair actual notice of the matters in issue.

Notice of a proposed settlement, sent to stockholders in a class action suit is sufficient if it contains a fair description of the proposed settlement, puts stockholders upon notice as to the general nature of the subject matter, and warns them that their substantial interests are involved. The notice is not required to eliminate all occasion for initiative and diligence on the part of the stockholders. *Braun v. Fleming-Hall Tobacco,* Del.Supr., 92 A.2d 302, 309 (1952); *Gladstone v. Bennett,* Del.Supr., 153 A.2d 577, 583 (1959); *Krinsky v. Helfand,* Del. Supr., 156 A.2d 90, 95 (1959). Our review of the disputed notice finds us in agreement with plaintiff's position that it fully conformed to what is required under *Braun v. Fleming-Hall Tobacco,* supra. The fact that the notice described the challenged investments in terms of the number of U.S. Treasury Bond contracts rather than in

terms of their dollar values cannot be considered misleading when a stockholder could easily have found out the value of a U.S. Treasury Bond. Moreover, not only was the notice itself adequate, but Objectors' attorneys had reviewed the entire files of plaintiffs' attorneys and thus cannot be heard to say that the notice was inadequate.

Objectors' second contention is that they were denied their due process rights by the refusal of the Court of Chancery to delay the settlement to permit them to take discovery and the Court's approval of the settlement without receiving live testimony or affidavits in support thereof.

■ A refusal to delay a settlement to permit objectors to take discovery will not be overturned unless there was an abuse of discretion on the part of the Vice-Chancellor. *Rome v. Archer,* Del.Supr., 197 A.2d 49, 56 (1964). Moreover, objectors to a settlement must show a need for the additional discovery and must show that they have acted diligently. *Rome v. Archer,* supra, at 57; *Girsh v. Jepson,* 3rd Cir., 521 F.2d 153, 157–158 n. 9 (1975).

■ In the instant case the derivative suit was filed in the Court of Chancery on November 4, 1981 and extensive discovery immediately ensued. On January 27, 1982 Objectors filed a complaint in New Jersey. This complaint was virtually identical to the one filed in Delaware. In February, 1982 Objectors' counsel learned from Resorts' counsel that a settlement of the Delaware cases had been negotiated. Despite this knowledge Objectors made no attempt to intervene in Delaware. They made no attempt to take discovery in Delaware, nor did they begin any discovery in their own law suit in New Jersey. It was not until the day of settlement, nearly three months after learning of the negotiated settlement, that a request to conduct more discovery was made. In this request there was no demonstration by Objectors of the need for this additional discovery. Given this record we cannot say that the Vice-Chancellor ruling on this point amounts to an abuse of discretion.

■ As for Objectors' argument concerning an evidentiary hearing, we find that the Vice-Chancellor's refusal to hold one was not error. In *Kinsky v. Helfand,* supra at 94 this Court stated:

"In determining whether or not to approve a proposed settlement of a derivative stockholders' action, it is not necessary for the court to try the issues of the case for the reason that any such requirement would defeat the purpose of settlement, itself. *Braun v. Fleming-Hall Tobacco Co., Inc.,* 33 Del.Ch. 246, 92 A.2d 302. The court is called upon to consider and weigh the nature of the claim, the possible defenses, and to exercise business judgment in determining whether or not the proposed settlement is reasonable."

Our review of the record indicates that the Vice-Chancellor was well aware of the subtleties of the litigation as demonstrated by his extensive participation in pre-trial discovery motions and the various written opinions and orders filed by him. Given the extensive record [3,000 documents and over 1,200 pages of deposition testimony], Objectors' failure to demonstrate due diligence before hearing and a need for further discovery, as well as the Court's familiarity with the record, we find no error in his refusal to hold an evidentiary hearing. *Braun v. Fleming-Hall Tobacco,* supra at 310; *Krinsky v. Helfand,* supra at 94; *Gladstone v. Bennett,* supra at 583; *Girsh v. Jepson,* supra at 157–158; Moore's Federal Practice § 23.80(4).

■ Objectors' third contention is that the Vice-Chancellor abused his discretion in approving the settlement because the record was inadequate for him to make a decision, and even assuming adequacy of the record the Vice-Chancellor did not fully put forth the facts relied upon in reaching his decision. Our review leads us to conclude that the record, which included substantial discovery material and the Objectors' arguments and their version of the facts, was fully adequate to enable the Court of Chancery to properly approve the settlement.

The various opinions issued by the Vice-Chancellor indicate that he was fully aware of the issues before him and that he concisely but clearly stated his reasons for approving the settlement.

■ Objectors' fourth contention is that the Court of Chancery failed to adequately examine the claims, defenses, law and facts to justify the exercise of its business judgment. This argument is without merit.

> "Before a trial court may exercise its own business judgment regarding a class or derivative action settlement, it must consider the nature of the claim, the possible defenses to it, the legal and factual obstacles facing the plaintiff in the event of trial." *Rome v. Archer,* supra at 53.

The foregoing test in *Rome v. Archer* is precisely a description of what the Court of Chancery did in the instant case. After receiving a thorough presentation of the legal and factual issues through the parties' briefs submitted in support of the Stipulation and Settlement and Objectors' brief, the Vice-Chancellor addressed the ultimate question of whether or not defendants' investment of Resorts' assets fell within the ambit of the business judgment rule. The Court confronted the issue in the following manner:

> "The basic allegation ... is that the individual defendants, the directors of Resorts, committed a breach of the fiduciary duty they owed to Resorts because they caused or permitted Resorts to make reckless or imprudent investments in that the corporation purchased silver future contracts and U.S. Treasury Bond futures contracts. Plaintiff, in effect, termed these purchases as being speculative.
>
> Defendants, on the other hand, asserted that the decisions to purchase the futures contracts were protected against judicial scrutiny by the business judgment rule and were, in any case, a wise investment considering Resorts' commitment to construction projects which would require sizeable sums of cash in the future and upon the expectations that the unusual

high interest rates prevalent in 1981 would fall.

> From the above facts it is obvious that in order for the plaintiffs to prevail in the suits filed, they would have to overcome the usual presumption of propriety as to the decision to purchase futures afforded to the defendants by the business judgment rule. *Maldonado v. Flynn,* Del.Ch., 413 A.2d 1251 (1980); rev'd., *Zapata v. Maldonado,* Del.Supr., 430 A.2d 779 (1981). There has been no allegation that any of the directors directly profited from any of the transactions or that there is any other disabling factor present.
>
> It is also obvious that plaintiffs' burden was difficult. Indeed, from my experience in reviewing these types of cases, the plaintiffs' claim was among the most tenuous I have ever encountered."

This statement reveals that the Vice-Chancellor expressly recognized that, absent a showing of self-dealing or bad faith, Resorts' directors were protected in their investment decisions by the presumption of propriety afforded them by the business judgment rule. His conclusion that plaintiffs' claim "was among the most tenuous I have ever encountered", demonstrates that he fully understood the appropriate legal rules and applied them to the instant facts. Objectors have presented absolutely no credible evidence which shows that the Vice-Chancellor's understanding of the issues and record was so minimal as to constitute an abuse of discretion.

■ Objectors' fifth contention, which goes to the merits of the settlement, is that the Court of Chancery abused its discretion in exercising its business judgment to approve the settlement. In this regard Objectors put forth two arguments.

First, Objectors attack the settlement provision which is required to retain the services of Dr. Bradford Cornell to advise it with respect to any additional purchases of Treasury bond future contracts in excess of the 2,850 it held at the time of the settlement. Objectors contend that this provision is of no real benefit to the stockholders

because Resorts is not bound to Dr. Cornell's advice. This argument ignores the fact that any settlement that would require Resorts' Board of Directors to be bound by Dr. Cornell's advice would violate the well settled rule that the Board of Directors manage the corporation, and they cannot abdicate these responsibilities. 8 *Del.C.* § 141. Moreover, this provision does benefit the corporation and its stockholders in that the management of Resort would be obligated to at least listen to the expert advice of Dr. Cornell.

 As a second ground, Objectors contend that the scope of the settlement is too broad in that the Release of Claims approved by the Vice-Chancellor bars a stockholder from ever questioning a Resorts' investment regardless of how reckless. This argument simply ignores the fact that it is the Order and Final Judgment of July 26, 1982 which controls the terms of the settlement and not the Release of Claims contained in the notice of the proposed settlement sent to all shareholders. Viewing the settlement as a whole, it is evident that there is no justification in holding the Vice-Chancellor's approval was an abuse of discretion.

 Objectors' sixth contention is that the Vice-Chancellor's award of attorneys' fees and expenses to plaintiffs was unjustified on the basis of the settlement. This argument is based on our acceptance of Objectors' earlier argument that the stockholders received no benefit from the settlement. To the contrary, we found a benefit to the stockholders and company, and, as a result, approve the award of attorneys' fees and expenses. *Chrysler Corp. v. Dann,* Del. Supr., 223 A.2d 384 (1966).

 Objectors' final contention is that the Court of Chancery had no jurisdiction over the non Delaware residents who were not parties to the action by virtue of their consent or by personal service of process upon them.

Absent plaintiffs in a class action suit are bound by such a judgment despite the fact that they were not personally served and did not appear in the rendering court so long as the due process requirements of proper notice and adequate representation were satisfied. *Miner v. Gillette Co.,* Ill. Supr., 87 Ill.2d 7, 56 Ill.Dec. 886, 428 N.E.2d 478 (1981), cert. dismissed, —— U.S. ——, 103 S.Ct. 484, 74 L.Ed.2d 249 (1982); *Phillips Petroleum Co. v. Duckworth,* Kan. Supr., No. 82–54608–S (June 28, 1982) cert. denied —— U.S. ——, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983); *Hansberry v. Lee,* 311 U.S. 32, 41–42, 61 S.Ct. 115, 117–118, 85 L.Ed. 22 (1940). We agree with the Vice-Chancellor's finding that Objectors received proper notice, and that the named plaintiffs adequately represented their interest. Therefore, we find no merit to this final argument advanced·by Objectors.

For the above stated reasons the judgment of the Court of Chancery is

\* \* \*

AFFIRMED.