HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P., Highland Equity, Focus Fund, L.P., Highland Capital Management, L.P., and Highland Capital Management Services, Inc., Appellants

v.

ANDREWS & KURTH, L.L.P., Appellee.

No. 05–07–00214–CV.

Court of Appeals of Texas, Dallas.

March 25, 2008.

Paul Brian Lackey, Michael P. Aigen, Lackey Hershman, L.L.P., Dallas, TX, for Appellant.

Kenneth E. Carroll, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, TX, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

AMOS L. MAZZANT, Justice.

Appellants sued appellee Andrews Kurth LLP[1] for legal malpractice. Andrews Kurth won a traditional and no-evidence summary judgment on the element of injury. Appellants challenge the summary judgment in three issues. We affirm

## I. BACKGROUND

### A. Facts

We draw this factual recitation from the evidence viewed in the light most favorable to appellants (collectively "Highland") because they were the nonmovants in the trial court. Motient Corporation is a Delaware corporation that provides "wireless data solutions." In the spring of 2005, Motient sought to raise capital by issuing and selling securities, specifically 408,500 shares of Series A Cumulative Convertible Preferred Stock ("Series A Preferred Stock"). Highland, which was already a Motient shareholder at the time, was interested in purchasing some of the proposed Series A Preferred Stock. Highland represented to Motient that if the Series A

Preferred Stock carried standard voting rights, as initially proposed, then Highland's purchase would trigger notification obligations and a mandatory waiting period under the federal Hart–Scott–Rodino Antitrust Improvement Act of 1976. Motient's board of directors ultimately approved a Certificate of Designations[2] for the Series A Preferred Stock that was filed with the Delaware Secretary of State on April 15, 2005. As part of the stock-purchase transaction, Highland required and received an opinion letter from Andrews Kurth. Andrews Kurth expressly stated in the opinion letter that the letter was for the benefit of certain purchasers including Highland. The letter contained the following opinion:

> Neither the execution and delivery by [Motient] of the Transaction Agreements, nor the performance by [Motient] of its obligations thereunder in accordance with the terms thereof, will violate (A) the Certificate of Incorporation, (B) the Bylaws, (C) the [Delaware General Corporate Law] or (D) the Applicable Laws of the State of New York.

Highland purchased 90,000 shares of Series A Preferred Stock for $90 million on or about April 15, 2005.

Shortly after the closing of the Series A Preferred Stock transaction, Motient discovered a potential conflict between its Restated Certificate of Incorporation and the limitation on voting rights contained in the Series A Preferred Stock Certificate of Designations. The Restated Certificate of Incorporation provided that Motient "shall

---

**1.** Although appellants have referred to appellee as "Andrews & Kurth, L.L.P." throughout this proceeding, appellee refers to itself as "Andrews Kurth LLP."

**2.** A "certificate of designations" is a certificate that sets forth the "designations of and

the number of shares in each series, together with a resolution setting forth the provisions relating to the class or series so designated." 1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 8.1 (3d ed.2003).

not issue any class of non-voting stock." The Series A Preferred Stock, however, afforded its owners the right to vote only (1) "as required by law" and (2) whenever Motient might undertake to modify the rights and privileges of the Series A Preferred Stock "in a manner adverse to the holders" of that stock. Motient took two steps to try to fix the potential problem. First, its board of directors approved the filing of a Certificate of Correction to amend the Certificate of Designations. The Certificate of Correction, which was filed with the Delaware Secretary of State on July 29, 2005, expanded the voting rights of the Series A Preferred Stock holders. Second, the Motient board approved an exchange offer whereby the holders of Series A Preferred Stock could exchange their shares for an equal number of shares of new Series B Cumulative Convertible Preferred Stock. This Series B Preferred Stock was identical to the Series A Preferred Stock except that it included "the right to vote on an as-converted basis with the holders of [Motient]'s common stock for all matters in which holders of [Motient]'s common stock are entitled to vote." All of the holders of Series A Preferred Stock except for Highland opted to accept the exchange offer.

## B. Procedural history

Highland sued Andrews Kurth in August 2005, alleging that Andrews Kurth's opinion letter was wrong and that Highland's Series A Preferred Stock was void. Highland pleaded the following theories of recovery: fraudulent misrepresentation, negligent misrepresentation, aiding and abetting, conspiracy, and "aider" liability under the Texas Securities Act ("TSA"). Andrews Kurth filed a traditional and no-evidence motion for summary judgment attacking the element of injury as to all claims and alternatively seeking dismissal of the TSA claim because Highland still owned the Series A Preferred Stock. Highland filed a response, and the trial court granted Andrews Kurth's motion. Highland appealed the take-nothing judgment.

## II. STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 51 Tex. Sup.Ct. J. 216, 221 (Dec. 14, 2007). We consider all grounds presented in the summary-judgment motion and affirm if any ground is meritorious. *Sefzik v. City of McKinney*, 198 S.W.3d 884, 890 (Tex.App.-Dallas 2006, no pet.).

The trial court properly grants a no-evidence motion for summary judgment if, after adequate time for discovery, the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial and the respondent produces no summary-judgment evidence raising a genuine issue of material fact on those elements. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex.2006) (per curiam). We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006) (applying the standards announced in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005), to a no-evidence summary judgment). The scope of our review includes both the evidence presented by the movant and the evidence presented by the respondent. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 881 (Tex.App.-Dallas 2007, no pet.).

### III. ANALYSIS

We have held that when a motion for summary judgment presents both traditional and no-evidence grounds, it is appropriate to analyze the no-evidence grounds first. *Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex.App.-Dallas 2007, pet. denied). Thus, we first consider Andrews Kurth's contention that Highland adduced no evidence of injury in support of any of its causes of action. We conclude that Andrews Kurth's no-evidence ground for summary judgment is dispositive.

### A. Highland failed to raise a genuine fact issue as to whether the Series A Preferred Stock was void when issued.

▮▮▮▮ Highland's argument proceeds as follows. First, it contends that stock issued in violation of a corporation's charter[3] is issued without authority of law and is therefore void under Delaware law.[4] Next, it contends that the Series A Preferred Stock, as issued, violated Motient's charter because it was "non-voting stock." Therefore, it concludes, the Stock was void when issued. We conclude that the Stock as issued did not violate Motient's charter.

As previously noted, Motient's charter provided that Motient "shall not issue any class of non-voting stock." Section 3 of the Certificate of Designations provided

that the Series A Preferred Stock would have the following voting rights:

> Section 3. *Voting Rights.* Except as required by law, holders of Series A Preferred shall have no voting rights and their consent shall not be required for taking any corporate actions. Notwithstanding the foregoing, the Corporation shall not have the right, as long [as] any shares of Series A Preferred are outstanding, to modify the rights, preferences or privileges of the Series A Preferred in a manner adverse to the holders of Series A Preferred without first obtaining the approval (by vote or written consent, as permitted by law) of the holders of at least a majority of the then-outstanding shares of Series A Preferred.... [5]

Thus, there are two express exceptions to the general rule that holders of Series A Preferred Stock have no voting rights. The first exception is that holders of the Stock will have whatever voting rights are required by law. The only relevant "law" that the parties have referred to is the following provision of the Delaware General Corporation Law:

> The holders of the outstanding shares of a class shall be entitled to vote as a class upon a proposed amendment [to the certificate of incorporation], *whether or not entitled to vote thereon by the certificate of incorporation,* if the amendment

---

3. In Delaware, courts also refer to a corporation's certificate of incorporation as its "charter." *See, e.g., STAAR Surgical Co. v. Waggoner,* 588 A.2d 1130, 1136 (Del.1991). In the interest of brevity, we will generally use the term "charter" in this opinion.

4. Delaware law governs the internal affairs of Motient, a Delaware corporation. *Warren v. Warren Equip. Co,* 189 S.W.3d 324, 329 (Tex. App.-Eastland 2006, no pet.). When determining the law of another state, we proceed much as a federal court does under the *Erie* doctrine: we look first for an authoritative determination of the issue from that state's

highest court, and, if none is available, we give due deference to decisions by that state's lower courts and other authorities. *See Francis v. Herrin Transp. Co.,* 432 S.W.2d 710, 714 (Tex.1968) (following decisions of Louisiana's courts of appeals in the absence of a pertinent decision from the Louisiana Supreme Court).

5. In its brief, Highland asserts that "the Certificate of Designations provided that the Series A Preferred Stock would have no voting rights" and then quotes only the first sentence of this passage.

would ... alter or change the powers, preferences, or special rights of the shares of such class so as to affect them adversely.

DEL.CODE ANN. tit. 8, § 242(b)(2) (2008) (emphasis added). The second exception in section 3 of the Certificate of Designations is similar to the proviso in section 242(b)(2) since it gives Series A Preferred Stock holders the right to vote on any action by Motient "to modify the rights, preferences or privileges of the Series A Preferred in a manner adverse to the holders of Series A Preferred." The second exception, however, is broader than the statutory one because the statutory right to vote applies only to amendments of the charter while the second exception applies to any kind of corporate action that would adversely modify the rights, preferences, or privileges of the Series A Preferred Stock.

■ Next, we consider the meaning of the phrase "non-voting stock" as used in Motient's charter. The parties have cited no Delaware authorities construing this phrase in this context, and we have found none, so we resort to general principles. Delaware courts treat a charter as a contract between the State and the corporation, between the corporation and its shareholders, and among the shareholders themselves. *STAAR Surgical Co. v. Waggoner*, 588 A.2d 1130, 1136 (Del.1991). Thus, when construing a charter, a court should apply ordinary principles of contractual interpretation. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del.2006). This means that clear and unambiguous language must be given its plain meaning and that ambiguous language must be construed in a manner that will harmonize any apparent conflicts and give effect to the intent of the drafters. *Id.* We may not "torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty," and

the "true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del.2006). Delaware courts look to dictionaries for assistance in determining the plain meaning of terms that are not defined in a contract. *Id.* at 738.

■ The plain meaning of "non-voting" is "not entitling the holder to vote." WEB-STER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1539 (1981) (giving "nonvoting preferred stock" as an example of this usage). Thus, it follows that if the Series A Preferred Stock entitles its holders to vote at all, it is not "non-voting stock" and it does not violate Motient's charter. This interpretation accords with the plain language of the charter, and we think it also accords with the objective intent of the drafters of the charter to the extent we can discern it. In particular, we note that the drafters took advantage of section 151 of the Delaware General Corporation Law by expressly authorizing Motient's board to provide for the issuance of preferred stock by resolution, without shareholder approval, and to specify the powers, designations, preference, rights, and restrictions of that stock. *See* DEL.CODE ANN. tit. 8, § 151(g) (2008). If a charter does not expressly grant this power to the board, then the issuance of a new class or series of stock must be authorized by the charter itself or by a formal amendment to the charter, which generally requires shareholder approval. *Id.; see also* DEL.CODE ANN. tit. 8, § 242(b)(1) (2008). By authorizing the board to issue new classes and series of stock without the need for shareholder approval, the drafters of the Motient charter manifested a desire to give the board maximum flexibility in responding to the corporation's needs for capital. Giving the phrase "non-voting stock" a literal interpretation protects that

flexibility because it both maximizes the board's options in defining voting rights and gives the board clear guidance as to what is forbidden.

■ Applying our interpretation of the charter to the Certificate of Designations, we conclude that the Series A Preferred Stock is not "non-voting stock" forbidden by Motient's charter. We rely on the second sentence of section 3 of the Certificate of Designations, which provides as follows:

> [T]he Corporation shall not have the right, as long [as] any shares of Series A Preferred are outstanding, to modify the rights, preferences or privileges of the Series A Preferred in a manner adverse to the holders of Series A Preferred without first obtaining the approval (by vote or written consent, as permitted by law) of the holders of at least a majority of the then-outstanding shares of Series A Preferred, voting or acting, as the case may be, as a single class.

This provision affirmatively guarantees certain voting rights to the holders of Series A Preferred Stock, independent of any other legal requirements. Moreover, as noted above, these voting rights appear to be broader than those guaranteed by Delaware's General Corporation Law. Thus, the second exception in section 3 creates voting rights that both add to and exist independently of those provided by law. It is true that this voting right is a limited one, but this only illustrates the necessity of giving the phrase "non-voting stock" a literal reading so as to provide a bright-line rule for corporate guidance. To hold that the Series A Preferred Stock voting rights are so limited that the Stock is equivalent to "non-voting stock" would create substantial uncertainty for future cor-

porate boards, and it would require courts to determine when "limited voting rights" equal "no voting rights" without any guiding standards or principles. Accordingly, we decline to make such a holding.

## B.  Conclusion

The Series A Preferred Stock is not "non-voting stock." Highland adduced no evidence that the Stock was void when Motient issued it. Because Highland's argument that it suffered injury requires that Stock to be void *ab initio*,[6] the trial court correctly granted a no-evidence summary judgment in favor of Andrews Kurth on all claims. We overrule Highland's first two issues and conclude that we need not consider its third and final issue. TEX. R.APP. P. 47.1.

## IV.  DISPOSITION

We affirm the judgment of the trial court.

---

**6.** At oral argument, Highland at first conceded that its entire claim depended on the Stock's voidness. It later suggested that it could possibly show injury another way, by showing that the Stock as corrected was not

the same stock it had contracted to purchase. But this argument was not briefed, and we see no evidence in the record that the correction harmed Highland in any way.