HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P., Highland Equity Focus Fund, L.P., Highland Capital Management, L.P., and Highland Capital Management Services, Inc., Appellants,

v.

MOTIENT CORPORATION, Appellee.

No. 05–07–01735–CV.

Court of Appeals of Texas, Dallas.

March 6, 2009.

Rehearing Overruled April 30, 2009.

See also 2006 WL 741939, 248 S.W.3d 887.

Paul B. Lackey, Michael P. Aigen, Ross A. Mortillaro, Lackey Hershman, LLP, Dallas, for Appellant.

T. Ray Guy, Paige Holden Montgomery, Kent Barnett, Brian J. D'Amico, Weil,

Gotshal & Manges, LLP, Dallas, for Appellee.

Before Justices MORRIS, LANG–MIERS, and WHITTINGTON.[1]

## OPINION

Opinion by Justice WHITTINGTON.

Appellants Highland Crusader Offshore Partners, L.P., Highland Equity Focus Fund, L.P., Highland Capital Management, L.P., and Highland Capital Management Services, Inc. (together Highland) purchased $90 million dollars' worth of shares of Series A Cumulative Convertible Preferred Stock (Series A Preferred Stock) from appellee Motient Corporation. Highland contends its purchase was "based on material misrepresentations made by Motient regarding the voting rights of the Motient Stock and Motient's internal controls." In a single issue, Highland appeals the trial court's summary judgment in favor of Motient, contending the doctrines of res judicata, collateral estoppel, and judicial estoppel do not bar this action; Texas law governs Highland's tort claims; Highland did not ratify Motient's unlawful conduct; and its fraud and negligent misrepresentation claims are not barred. Because we conclude there are genuine issues of material fact precluding summary judgment as a matter of law, we reverse the trial court's judgment in part and remand the cause to the trial court for further proceedings.

1. The Honorable Mark Whittington, Justice, Court of Appeals, Fifth District of Texas at Dallas, retired, sitting by assignment. This appeal was submitted to the panel before Justice Whittington's retirement on December 31, 2008.

2. See also Motient Corp. v. Dondero, 269 S.W.3d 78 (Tex.App.-Dallas 2008, no pet.), in which Motient sued James D. Dondero, High-

## BACKGROUND

This is one of several lawsuits among Highland and Motient, Motient's officers and directors, and Motient's outside counsel. Highland filed this lawsuit in August 2005 seeking to rescind its purchase of the stock from Motient. Previously, three suits were filed and dismissed in Delaware, including a class action, a derivative action, and an action to examine Motient's books and records. In a fourth case, Highland sued Motient's outside counsel (the malpractice action); we affirmed the trial court's summary judgment in favor of the defendant. See Highland Crusader Offshore Partners, L.P. v. Andrews & Kurth, L.L.P., 248 S.W.3d 887, 892 (Tex.App.-Dallas 2008, no pet.).[2] Another Texas action was filed in the district court of Travis County, removed to the United States District Court for the Western District of Texas, and dismissed (the Austin action).

In this case, Motient moved for summary judgment alleging the judgments in the Delaware derivative action and the Austin action precluded this lawsuit. Motient also alleged both collateral and judicial estoppel from the malpractice action and the Austin action barred Highland's claims. In its motion for summary judgment, Motient also argued New York law applied. Motient alleged that under New York law judgment was proper on Highland's fraud, negligent misrepresentation, and statutory claims, and all of Highland's claims were barred by ratification. The

land's chief executive, for breaches of fiduciary duty relating to a proxy fight for control of Motient. We concluded the summary judgment in favor of Dondero should be reversed because Dondero did not establish his affirmative defense of res judicata as a matter of law. Motient did not make any claim in this case based upon collateral estoppel or res judicata relating to the Dondero suit.

trial judge granted Motient's motion without stating specific grounds.

## STANDARD OF REVIEW

The standard for review of a traditional summary judgment is well-settled. We review a summary judgment de novo to determine whether a party has established its right to summary judgment as a matter of law. *See Dallas Cent. Appraisal Dist. v. Cunningham,* 161 S.W.3d 293, 295 (Tex. App.-Dallas 2005, no pet.). A party moving for a traditional summary judgment must show no material fact issue exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cunningham,* 161 S.W.3d at 295. When reviewing a summary judgment, we must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller v. Wilson,* 168 S.W.3d 802, 824–25 (Tex. 2005). When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 567 (Tex.1989).

## RES JUDICATA—DELAWARE ACTION

■ Highland's first argument is that the court's ruling in the Delaware derivative action is not res judicata as to this lawsuit. We agree. The Delaware derivative action was brought by Highland Legacy Limited on behalf of Motient Corporation, "to recover amounts wrongfully paid by Motient to the Defendants,"[3] according to the First Amended Complaint. The court in the Delaware action described its ruling as follows:

The defendants have moved to dismiss the complaint under [Delaware Court of Chancery] rule 23.1 for failure to allege with particularity facts establishing demand futility. The court's review of the complaint reveals that it does not allege with particularity facts from which the court could reasonably conclude that the majority of the directors in office when the complaint was filed were disabled from impartially considering a demand. In particular, the court cannot reasonably infer from the scant particularized facts alleged that there is a reasonable doubt that either (1) the majority of the directors were disinterested and independent, or that (2) the challenged transactions were otherwise the product of a valid exercise of business judgment. For these reasons, the motion to dismiss under Rule 23.1 will be granted.

*Highland Legacy Ltd. v. Singer,* No. Civ.A. 1566–N, 2006 WL 741939, at *1 (Del.Ch. Mar. 17, 2006).

■ To determine the preclusive effect of a judgment of another state's court, Texas courts apply the res judicata principles of that state. *See, e.g., Purcell v. Bellinger,* 940 S.W.2d 599, 601 (Tex.1997). Under Delaware law, res judicata bars a subsequent action if the court making the prior adjudication is a court of competent jurisdiction; the parties in the second matter were the same, or in privity with the parties in the first matter; the claim is the same in both cases; the plaintiff in the pending matter lost in the prior action; and the prior decree is final. *See Bailey v. City of Wilmington,* 766 A.2d 477, 481 (Del.2001). To determine whether the

---

**3.** Defendants in the Delaware action were Steven G. Singer, Gary Singer, Tejas, Inc., Tejas Securities Group, Inc., Gerald S. Kittner, Christopher W. Downie, Communications Technology Advisors, L.L.C., Capital & Technology Advisors, Inc., Peter D. Aquino, Jared E. Abbruszzese, Barry A. Williamson, Raymond L. Steele, and C. Gerald Goldsmith. Motient Corporation was a "nominal defendant" in the Delaware action.

claim is the same for purposes of res judicata, Delaware courts apply the "modern transactional view," that is, a second suit is barred "if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication." *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del.Ch.1980). The determination is "based on the underlying transaction and not on the substantive legal theories or types of relief which are sought." *Maldonado*, 417 A.2d at 381.

Highland argues neither the parties nor the claims are the same in this action as those in the Delaware action, while Motient contends the factual allegations are the same in the two suits and the parties are in privity. In this case, the transaction out of which Highland's claims arose was the sale of the Series A Preferred Stock. Highland claims it was fraudulently induced into making the purchase. In the Delaware derivative action, the court described the action as follows:

> A large stockholder brought this derivative action alleging that the directors committed corporate waste by paying exorbitant fees and warrants over a period of years to two financial advisory firms for their services. In addition, the plaintiff stockholder alleges an unrelated claim that the directors breached their fiduciary duties by allowing the brother of one of them to act in a managerial position in violation of a federal court order that forbids him from acting as an officer or director of any public company.

*Highland Legacy Ltd. v. Singer*, 2006 WL 741939, at *1. As Motient points out, there are facts common to both suits, and some of the parties are common at least in name. In this case, Highland complains that some of the misrepresentations and failures to disclose leading to its purchase of the Series A Preferred Stock arose out of the same conduct it describes in the Delaware case. Highland Legacy is the plaintiff in the Delaware action, and Motient is the "nominal defendant." We must determine if the allegations in the two suits arise out of the same transaction and if the parties are the same or in privity. *See Bailey*, 766 A.2d at 481.

Highland argues the parties are not the same because, although Highland Legacy was the named plaintiff, the suit was brought as a derivative suit on behalf of Motient. Quoting *Orloff v. Shulman*, C.A. No. 852–N, 2005 WL 3272355 (Del.Ch. Nov. 23, 2005), Highland argues, "[a]s a rule of black-letter law, suits brought by the same party in another capacity are not subject to claim preclusion." *Orloff*, 2005 WL 3272355, at *8 (citing *Carlton Invs. TLC v. Beatrice*, Civil Action No. 13950, 1997 WL 208962 (Del.Ch. Apr.21, 1997)). Motient notes that in *Orloff*, the court held claim preclusion did apply to some of the claims asserted in the second suit, for reasons of "public policy." *See Orloff*, 2005 WL 3272355, at *8. The *Orloff* court noted,

> Courts need not spare plaintiffs from the bar of res judicata if the important purposes of judicial efficiency and finality that the doctrine serves would be foiled. This case presents precisely such an instance. Weinstein is a closely held corporation which has long had only one minority shareholder group. As such, the nexus of interest between the derivative action and the individual action is likely to be especially close. In that context, to allow the Orloffs to proceed with a derivative suit would be to cut the heart out of the previous adjudication, conducted at great length and expense in New York.

*Orloff*, 2005 WL 3272355, at *8. The *Orloff* court, however, held only some of the plaintiffs' claims to be barred, those relating to the corporation's purchase and use

of property in New York known as Rockridge Farm. The court noted the current claims relating to Rockridge Farm were barred by res judicata because they were previously litigated in the New York action: "Rockridge Farm was expressly part of the previous litigation. The complaint in the New York action alleged substantially identical breaches of fiduciary duty by the Shulmans as those raised in the current case, including below market rents charged to the defendants and waste." *Orloff,* 2005 WL 3272355, at *8. Although the Delaware claims were "superficially different," with different reasons why the maintenance of Rockridge Farm constituted waste, "such claims are plainly of the same kind and about the same transaction advanced in the New York action." *Orloff,* 2005 WL 3272355, at *8. In contrast, claims that arose "from entirely different circumstances," such as alleged breaches of fiduciary duties and waste relating to leases on properties other than Rockridge Farm, did not arise out of the same transaction as that alleged in the New York action and were not barred by res judicata. *Orloff,* 2005 WL 3272355, at *9.

Here, the Delaware derivative action arose out of allegations that Motient's directors "committed corporate waste by paying exorbitant fees and warrants over a period of years to two financial advisory firms for their services," *Highland Legacy Ltd.,* 2006 WL 741939, at *1, while this suit seeks rescission of the sale of Series A Preferred Stock to Highland. The issue decided in the Delaware derivative action was whether, under Delaware Chancery Rule 23.1, Highland alleged with particularity facts establishing demand futility.[4] *Highland Legacy Ltd.,* 2006 WL 741939, at

*1. The Delaware court decided Highland Legacy did not allege sufficient facts from which the court could conclude the majority of Motient's directors "were disabled from impartially considering a demand." *Highland Legacy Ltd.,* 2006 WL 741939, at *1. Specifically, Highland Legacy did not allege sufficient facts showing "the challenged transactions were otherwise the product of a valid exercise of business judgment." *Highland Legacy Ltd.,* 2006 WL 741939, at *1. The transactions referred to by the Delaware court were the fees and warrants paid to financial advisory firms, not the sale of the Series A Preferred Stock. Further, the general rule in Delaware is that suits brought by the same party in another capacity are not subject to claim preclusion. *Orloff,* 2005 WL 3272355, at *8. We conclude the Delaware derivative action is not res judicata as to this action, because the parties appeared in different capacities and the claims arose out of different transactions from those alleged here. *See Orloff,* 2005 WL 3272355, at *9.

### Res Judicata–Austin Action

 Highland next argues that the court's ruling in the Austin action is not res judicata as to this lawsuit. Again, we agree. Because the Austin action was decided in federal court, federal law controls the determination whether res judicata will bar a later state court proceeding. *See Dondero,* 269 S.W.3d at 82 (citing *Geary v. Tex. Commerce Bank,* 967 S.W.2d 836, 837 (Tex.1998) (per curiam)). As we explained in *Dondero,*

> Res judicata, or claim preclusion, bars the litigation of claims that either have

---

4. Delaware Chancery Rule 23.1, entitled "Derivative actions by shareholders," provides in relevant part in subsection (a), "The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

been litigated or should have been raised in an earlier suit. When two successive suits seek recovery for the same injury, "a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." Under federal law, the doctrine of res judicata will apply if: (1) the parties are identical in both suits or in privity; (2) the same claim or cause of action was involved in both suits; (3) the prior judgment is rendered by a court of competent jurisdiction; and (4) the prior action was concluded by a final judgment on the merits.

*Dondero,* 269 S.W.3d at 83 (citations omitted). Highland challenges the second and third elements, arguing the suits did not involve the same claim or cause of action and the Austin court did not have jurisdiction over the claims in this action.

▆▆▆ The Fifth Circuit applies the transactional test to determine whether both suits involve the same claim or cause of action. *Dondero,* 269 S.W.3d at 83 (citing *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir.2005), *cert. denied,* 547 U.S. 1055, 126 S.Ct. 1662, 164 L.Ed.2d 397 (2006)). As the court explained in *Test Masters*:

> Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. What grouping of facts constitutes a "transaction" or a "series of transactions" must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business under-

standing or usage. If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred. The critical issue is whether the two actions are based on the "same nucleus of operative facts."

*Test Masters,* 428 F.3d at 571.

In the Austin action, Highland sued Motient and Capital & Technology Advisors, Inc. (CTA), in district court in Travis County. The defendants removed the case to the United States District Court for the Western District of Texas, and final judgment was rendered in that court. *Highland Crusader Offshore Partners, L.P. v. Motient Corp.,* No. A–06–CA–540–LY (W.D.Tex., Jan. 23, 2007). Highland's petition in the Austin action complained of a transaction between Motient and SkyTerra Communications, Inc. In an order dated January 23, 2007, the federal district judge summarized Highland's claims:

> This cause of action centers around an agreement ("the Agreement") between Motient and SkyTerra Communications, Inc. ("SkyTerra"), with which the Shareholders [appellants here], who are investors in Motient, take issue. The Shareholders allege that the Agreement is yet to be consummated, as it was recently signed, has not received the proper regulatory approvals, has not closed, and if consummated, would be grossly unfair to all of Motient's shareholders. The Shareholders allege that they have a direct interest in the Agreement as they are specifically referenced as intended third-party beneficiaries in the Agreement.... The Shareholders contend that declaring the Agreement unenforceable would produce a more equitable result than enforcement of the Agreement. By their action, the Shareholders seek rescission of the Agreement as well as rescission of Motient's contracts with Capital & Technology, who advised Mo-

tient during the negotiation of the Agreement, and repayment of any consideration paid by Motient to either SkyTerra or Capital & Technology.

The Austin court granted the defendants' motion to dismiss the case and rendered final judgment the same day. Highland argues the issues in the Austin case were whether the federal Investment Company Act claim was derivative or direct; whether the complaint properly alleged a derivative cause of action; and whether Highland had standing to challenge the SkyTerra agreement as a third-party beneficiary. In this case, in contrast, Highland seeks to set aside the sale of Series A Preferred Stock. As in *Brown v. Dr. Michael D. Hoffman & Associates*, 111 S.W.3d 826, 829–30 (Tex.App.-Dallas 2003, no pet.), we conclude Motient did not conclusively establish the two actions are based on the same nucleus of operative facts. Rather, "each was based on a separate and distinct contractual obligation." *Brown*, 111 S.W.3d at 829. "The facts necessary to prove the state claim are distinct from any fact necessary to prove the federal claim." *See Brown*, 111 S.W.3d at 829–30. We conclude the court's ruling in the Austin action is not res judicata as to this lawsuit.

### COLLATERAL AND JUDICIAL ESTOPPEL

 In its summary judgment motion, Motient contended the issue of damages was fully litigated in the malpractice action: "Simply put, once damages from an event—such as the Series A Preferred Stock transaction—are determined, that decision is final." Motient asserts Highland's claims seeking damages are barred by collateral estoppel; Motient does not contend Highland's claims for rescission are barred. The stock at issue in the malpractice action was the same stock at issue here, that is, the 90,000 shares of Series A Preferred Stock Highland purchased for $90 million on or about April 15, 2005. *See Highland Crusader Offshore Partners*, 248 S.W.3d at 892.

The doctrine of collateral estoppel is used to prevent a party from relitigating an issue that it previously litigated and lost. *Quinney Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex.1999) (per curiam). The doctrine generally applies when the issue was fully and fairly litigated in the previous action and was essential to the judgment in the previous action. *See Quinney Elec.*, 988 S.W.2d at 213.

In the malpractice action, Highland sued Andrews Kurth LLP, the law firm that issued the opinion letter concerning the issuance of the stock. They alleged the law firm's opinion letter issued at the time of the sale of the Series A Preferred Stock was wrong, and the stock was void. *See Highland Crusader Offshore Partners*, 248 S.W.3d at 889. The trial judge granted summary judgment in favor of the law firm on the element of injury, and we affirmed the trial court's judgment. *Highland Crusader Offshore Partners*, 248 S.W.3d at 888. We concluded the stock as issued did not violate Motient's charter, and further concluded, "Highland adduced no evidence that the Stock was void when Motient issued it." *Highland Crusader Offshore Partners*, 248 S.W.3d at 890, 892. We stated, "[b]ecause Highland's argument that it suffered injury requires that Stock to be void *ab initio*, the trial court correctly granted a no-evidence summary judgment in favor of Andrews Kurth on all claims." *Highland Crusader Offshore Partners*, 248 S.W.3d at 892 (footnote omitted).

In their fourth amended petition in this case, Highland alleges Motient entered into a registration rights agreement at the time of the sale "in order to ensure that,

once converted to common shares, the purchasers could freely sell the shares in the open market." Highland alleged it specifically negotiated and bargained for the attributes that would make the stock freely marketable. In connection with its claims for common law fraud, negligent misrepresentation, mutual mistake, and violations of the Texas Securities Act and section 27.01 of the Texas Business and Commerce Code, Highland pleaded "Motient made false representations of material fact concerning the Series A Preferred Stock and its voting rights, the relationship and ties between Motient, CTA and Tejas, the role of convicted felon Gary Singer and Motient's material accounting deficiencies." Highland alleged it would not have purchased the stock absent these false statements and omissions and it was damaged "by the false representations concerning the validity of the Series A Preferred Stock and the omissions described above." Highland alleges it is entitled to rescind its purchase of the shares because of the misrepresentations and omissions, but it alleges in the alternative it is entitled to recover damages for each cause of action.

Motient correctly asserts that Highland is barred from arguing that the stock was void from the outset because that issue was essential to the judgment in the malpractice action. In the malpractice action, Highland claimed the law firm's opinion letter was wrong and that Highland's Series A Preferred Stock was void. *Highland Crusader Offshore Partners,* 248 S.W.3d at 889. We concluded summary judgment was proper on the element of injury because "Highland adduced no evidence that the Stock was void when Motient issued it." *See Highland Crusader Offshore Partners,* 248 S.W.3d at 892.

It does not follow, however, that Highland is barred from proving damages that were caused by Motient's alleged misrepresentations and omissions because those claims do not require the Series A Preferred Stock "to be void *ab initio.*" *See Highland Crusader Offshore Partners,* 248 S.W.3d at 892. A conclusion that a law firm did not commit malpractice causing injury to Highland is not a conclusion that Highland could not have been defrauded by another party making different representations. Highland claims damage from a variety of misrepresentations and omissions, including allegations that Motient did not attempt to register the stock as promised and therefore the stock was not freely marketable. These issues were not fully and fairly litigated in the malpractice action, are not essential to the judgment in the malpractice action, and thus do not bar Highland's claims here. *See Quinney Elec.,* 988 S.W.2d at 213. We conclude Highland is not collaterally estopped from asserting its claims because of the malpractice action.

█ Finally, Motient moved for summary judgment on the ground that judicial estoppel barred Highland from asserting the Series A Preferred Stock is void or invalid. Motient cites *Hall v. GE Plastic Pacific PTE Ltd.,* 327 F.3d 391, 396 (5th Cir.2003), for the elements of judicial estoppel. The *Hall* court explained the doctrine of judicial estoppel:

Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." The purpose of the doctrine is to prevent litigants from "playing fast and loose" with the courts.... In this Circuit, "two bases for judicial estoppel" must be satisfied before a party can be estopped. First, it must be shown that "the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have

convinced the court to accept that previous position."

327 F.3d at 396 (citations omitted). While for the reasons discussed above, we agree with Motient that Highland is barred from asserting the stock is void based upon our opinion in the malpractice action, we do not agree the requirements of judicial estoppel have been met here.

Motient argues Highland successfully convinced the Austin court to accept the position the stock was valid because the court reached the merits of the dispute and did not dismiss the suit for lack of standing. Highland notes, "[i]t would be hard to imagine a less 'successfully advanced' argument than Highland's standing argument in the Austin Action." Highland points to the Austin court's order approving the Magistrate Judge's Report and Recommendation, in which the judge ruled Highland's claims should be dismissed because its pleading failed to allege a derivative cause of action; Highland failed to fulfill presuit requirements for bringing derivative claims; Highland lacked standing to pursue its claims under the federal Investment Company Act because it was not a party to the contract between Motient and SkyTerra; Highland failed to provide "any legal support" for its argument it acquired rights under the agreement; and Highland was not a third party beneficiary under the agreement. Motient argues that by referring to Highland as "shareholders," and by assuming Highland was harmed as holder of Series A Preferred Stock, the Austin court implicitly accepted the validity of the Series A Preferred Stock. This implicit assumption does not establish as a matter of law either that Highland's position in the Austin action was inconsistent with the position it takes here or that Highland convinced the Austin court to accept its position. *See Hall,* 327 F.3d at 396.

Summary judgment was not proper on the ground of judicial estoppel.

## RATIFICATION

Motient moved for summary judgment on the ground that Highland's claims were barred because Highland ratified the purchase of the stock. The trial judge denied an earlier summary judgment motion by Motient on the ground of ratification under Texas law. Here, Motient contends New York law applies to the dispute, and ratification was established as a matter of New York law. Although we decide next that Texas law rather than New York law applies to the parties' fraud and misrepresentation claims, we conclude that even under New York law there was a genuine issue of material fact as to ratification, precluding judgment as a matter of law.

Motient contends New York law provides that acceptance of dividends with knowledge of the facts constitutes waiver of the fraud and ratification of the purchase, citing *Brennan v. National Equitable Investment Co., Inc.,* 247 N.Y. 486, 488, 160 N.E. 924 (1928). Motient argues Highland learned of the facts underlying its claims in May through July of 2005; filed suit in August of 2005; then accepted dividends in October 2005 and again in 2006. While Highland later pleaded it was ready and willing to return the dividends as well as the stock, Motient contends this "attempt to reserve rights" came too late.

Highland counters that the continued validity of *Brennan,* a 1928 case, has been questioned, and further argues that ratification is a question of intent, not appropriate for summary judgment. In *Prudential Insurance Co. v. BMC Industries, Inc.,* 630 F.Supp. 1298, 1301 (S.D.N.Y.1986), the court stated: "While the *Brennan* opinion held that the acceptance of the benefits of a contract during the pendency of a suit for rescission may constitute ratification,

that holding has been superceded by developments in New York law on rescission and restitution." The *Prudential* court explained that between 1928, when *Brennan* was decided, and the date of the *Prudential* opinion, New York law had changed, so that "the receipt of benefits during the pendency of an action should not defeat a right of action for rescission." 630 F.Supp. at 1301. The court concluded: "By filing this suit demanding rescission, the Plaintiffs have made an unambiguous request to have the contract voided and therefore it is not possible to construe the acceptance of payments as an inference of Plaintiffs' intent to ratify the contract." 630 F.Supp. at 1302. Motient counters that the *Prudential* opinion is not controlling, and later New York courts have continued to follow *Brennan.* Certainly the principle that a party may ratify a contract by accepting its benefits after learning of alleged fraud is still good law in New York. *See, e.g., Agristor Leasing–II v. Pangburn,* 557 N.Y.S.2d 183, 185, 162 A.D.2d 960, 961 (N.Y.App.Div.1990) (party may not avoid an agreement on ground of fraud if, after acquiring knowledge of the fraud, it affirms contract by accepting a benefit under it). However, as noted in *Brennan,* this is primarily a question of fact regarding intent. *Brennan,* 247 N.Y. at 490, 160 N.E. 924 ("Generally, the issue is one of fact, whether the commission of certain acts shows an intent to waive a rescission. Waiver is rarely established as a matter of law but an intent contrary to apparent acts must be disclosed."). Reading *Brennan* and *Prudential* together, we conclude the acceptance of dividends after the filing of suit for rescission "may" constitute ratification in New York, *see Prudential,* 630 F.Supp. at 1301, but this is a question of fact to be determined by a jury, not appropriate for summary judgment, where as here both parties have

offered evidence of intent on which reasonable jurors could disagree.

### TEXAS STATUTORY AND COMMON LAW FRAUD CLAIMS

 Motient moved for summary judgment on the ground that Highland's claims under the Texas Securities Act and section 27.01 of the Texas Business and Commerce Code "cannot survive under New York law." Motient also moved for summary judgment on the ground that Highland's fraud and misrepresentation claims are barred by its contractual claims under New York law. To resolve these issues, we must determine whether New York law applies. "Generally, the issue of which state's law applies is a question of law we resolve by reviewing the record de novo." *Minnesota Mining & Mfg. Co. v. Nishika Ltd.,* 955 S.W.2d 853, 856 (Tex. 1996). In determining choice of law issues, we apply the most significant relationship test set out in the Restatement (Second) of Conflict of Laws. *Grant Thornton LLP v. Suntrust Bank,* 133 S.W.3d 342, 357–58 (Tex.App.-Dallas 2004, pet. denied). When the claim on which there is a conflict of laws is based on fraud and misrepresentations, and the plaintiff's actions in reliance took place in whole or in part in a different state from the one in which misrepresentations were made, we consider the following factors in determining which state has the most significant relationship to the occurrence and the parties:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Grant Thornton,* 133 S.W.3d at 358 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2) (1971)). As we noted in *Grant Thornton,* if any two of the contacts, apart from the defendant's domicil, state of incorporation, or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues. *Grant Thornton,* 133 S.W.3d at 358 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 cmt. j).

The parties dispute the first factor, where Highland relied on the alleged misrepresentations. Motient contends the parties' negotiations were conducted and concluded in New York because the closing took place in New York, the securities purchase agreement provided the closing would take place in New York, the stock certificates were to be issued in New York, and the signatures for the stock purchase agreement were collected in New York. Highland contends it signed the stock purchase agreement in Texas, conducted all negotiations from Texas, and transmitted signature pages of the securities purchase agreement via e-mail from Texas. Both parties rely on *Prairie Producing Co. v. Angelina Hardwood Lumber Co.,* 882 S.W.2d 640, 651 (Tex.App.-Beaumont 1994, writ denied), to support their arguments regarding the place of reliance. In *Prairie Producing Co.,* appellee had signed leases in Texas, but the lease negotiations were conducted in Louisiana, and another letter agreement had been signed in Louisiana before the leases were executed. The court stated, "At most, any 'reliance' claim now made by [appellee] to invoke Texas law, was the pro forma act of signing the previously agreed-to leases." *Prairie Producing Co.,* 882 S.W.2d at 651. The court stressed, "Appellee admits that 'lease negotiations were ... concluded at a meeting in Shreveport, Louisiana.'" *Prairie Producing Co.,* 882 S.W.2d at 651. Unlike *Prairie Producing Co.,* Highland here remained in Texas during negotiations and signed the securities purchase agreement in Texas. Thus, this factor weighs in favor of the application of Texas law.

As to the second factor, Motient argues Highland Crusader received representations in Bermuda because it is an offshore company based in Bermuda that lists a Bermudan address on its filings with the Securities and Exchange Commission. As to the remaining appellants, Motient does not dispute they received representations in Texas. Highland argues Highland Crusader did receive representations in Texas, even though it is a Bermuda corporation, because Highland Capital negotiated the deal in Texas on behalf of all appellants. This factor weighs primarily in favor of Texas law and, in any event, does not support the application of New York law. *See Grant Thornton,* 133 S.W.3d at 358–59 (plaintiffs received representations in place where they saw the prospectus, presumably their home states).

The parties dispute the third factor, where the misrepresentations were made. Highland cites to evidence that the Texas placement agent for Motient e-mailed draft term sheets and conducted negotiations via e-mail from Texas. Motient argues it made representations where it issued the prospectus, in New York, citing our opin-

ion in *Grant Thornton.* We note that in *Grant Thornton,* not only was the prospectus issued in Texas, but also "all of the alleged misrepresentations and omissions flowed from an audit and related work that occurred in Texas with respect to a Texas based corporation." *Grant Thornton,* 133 S.W.3d at 358. As there is some evidence the misrepresentations were made both in Texas and in New York, this factor is neutral.

As to the fourth factor, the parties' places of incorporation and principal places of business, Motient argues it is neutral because Motient is a Delaware corporation with its principal place of business in Illinois, Highland Crusader is a Bermuda corporation with its principal place of business in Bermuda, and the remaining appellants are Texas corporations with their principal places of business in Texas. Highland argues all of its investment decisions were made in Texas; Motient counters this is not an appropriate factor to consider. Motient contends that because these contacts point to several different jurisdictions, the factor is neutral. We do note that none of these contacts point to New York, while some point to Texas.

The parties agree the fifth factor is not applicable. The last factor, where Highland was to render performance under the contract, is also disputed. Highland urges it performed its obligations under the securities purchase agreement by wiring funds from three investment accounts in Texas. Motient argues the funds were received in Georgia because the securities purchase agreement provided payment would be made via wire transfer to the

place designated in writing by Motient, Motient designated its bank account in Georgia, and the wire transfer was made to the account in Georgia. In support of its argument, Motient cites *Scottsdale Insurance Co. v. National Emergency Services, Inc.,* 175 S.W.3d 284, 296 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (place of performance was Texas, where premium was to be paid in Texas for transmission to Arizona). Assuming the place of performance was Georgia, this factor is neutral and, in any event, does not support application of New York law.

Both parties argue equity supports their positions. Motient argues New York has a greater interest in the securities purchase agreement because most of the investors hailed from New York. Investors from New York purchased more than half of the Series A Preferred Stock. Motient also points out that Highland Crusader, the Bermuda corporation, purchased more than eighty-six percent of the shares appellants received. Therefore, Motient argues, Texas has no interest in Highland Crusader's claims. Motient also argues the place of loss was New York because Highland entered into the agreement in New York and received consideration there, citing comment c to section 148. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 cmt. c.[5] Highland counters that the interests of nonparties to the lawsuit, such as the other New York investors, are not relevant to a determination under section 148. Highland further argues the place of loss was Texas because it relinquished assets here and entered into the contract here.

5. Comment c provides in part, "When plaintiff's initial act of reliance is his entry into a contract by which he binds himself to relinquish assets, the place of loss may be considered to be either the place where the plaintiff entered into the contract or the place where he relinquished the assets pursuant to the terms of the contract, or finally the place where he received the consideration for the relinquishment."

In *Grant Thornton,* because we concluded application of section 148 did not resolve the issue, we considered the factors under section 6 of the Restatement as applied to the plaintiffs' claims under the Texas Securities Act. *See Grant Thornton,* 133 S.W.3d at 359–61. Neither party here offered an analysis of the section 6 factors, and we do not undertake one. We do note, however, our conclusions in *Grant Thornton* that the general purpose of the Texas Securities Act is to protect investors, and that almost none of the other states involved "are as interested in providing a remedy for the alleged fraud in this case as Texas is...." *See Grant Thornton,* 133 S.W.3d at 360 (discussing cause of action against accounting firm). Here, Motient argues for the application of New York law because several of Highland's claims arguably would be barred under New York law but not under Texas law.

Motient relies on *Greenberg Traurig of New York, P.C. v. Moody,* 161 S.W.3d 56 (Tex.App.-Houston [14th Dist.] 2004, no pet.), in which the court concluded New York law applied to the securities fraud claims of Texas investors against the New York attorneys who represented the issuing company in a public offering. The court undertook a detailed analysis under section 148 of the Restatement and concluded "most of the conduct upon which the Investors' claims are based occurred in New York." *Greenberg Traurig,* 161 S.W.3d at 56. The court noted as an "important distinction" that "greatly impacts the conflict-of-laws analysis" that the investor plaintiffs had no contact and no direct dealings with the defendant New York law firm, and the representations alleged to have been made by the law firm "were not directed to Texas." *Greenberg Traurig,* 161 S.W.3d at 72–73. Other contacts occurred in Pennsylvania, and Texas contacts were "relatively few, the principal one being that it is the home state of the Investors." *Greenberg Traurig,* 161 S.W.3d at 73. The court stated, "[s]ignificantly, all of the events relating to the Investors' claims against Greenberg Traurig occurred outside of Texas." *Greenberg Traurig,* 161 S.W.3d at 73. The court noted New York had a strong interest in applying its laws to securities fraud taking place there, and also emphasized, "[i]t is New York, not Texas, that has the keen interest in disciplining attorneys practicing in New York." *Greenberg Traurig,* 161 S.W.3d at 75. Many of the factors important to the *Greenberg Traurig* court are not present here. New York is not Motient's home state. The parties had direct dealings with each other, and communications were directed to Highland in Texas. There is no claim against attorneys practicing in New York who would be disciplined there. With these distinctions, New York's interest is "far less compelling" here than in *Greenberg Traurig. See Greenberg Traurig,* 161 S.W.3d at 76 ("Considering all of the factors, Texas' interest is far less compelling than that of New York.").

Although our review does not reveal any overwhelming factor in determining which state has the most significant relationship to the occurrence and the parties, we conclude Texas has a more significant relationship to the dispute than New York and therefore New York law does not apply. Thus, summary judgment was not proper on the ground that Highland's claims under the Texas Securities Act and the Texas Business and Commerce Code do not survive under New York law, and on the ground that Highland's fraud and misrepresentation claims are defective under New York law.

### NEGLIGENT MISREPRESENTATION

■ Highland next argues that even if Texas law rather than New York law is

applied, summary judgment was not proper on its claim for negligent misrepresentation. Highland argues Motient's "negligent false misrepresentations and omissions caused injury to Highland entitling it to out-of-pocket money damages arising prior to the contract, and separate and apart from the money damages (including benefit of the bargain damages) sought by Highland under its breach of contract claim."

Motient counters summary judgment was proper on Highland's claim for negligent misrepresentation because the "independent injury rule" applies to bar recovery in tort where the only loss or damage is to the subject matter of the contract, citing *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991). Motient concedes the rule in *DeLanney* would not bar Highland's fraudulent inducement claims, citing *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998). But Motient contends Highland has not alleged it has suffered any tort injury independent from its injury resulting from breach of contract.

In neither its petition nor its summary judgment response did Highland specify or describe an injury independent from the injury resulting from breach of contract. In its negligent misrepresentation claim in its operative petition, Highland alleges:

> Because of Motient's negligent misrepresentations or omissions, Plaintiffs are entitled to rescission of the Securities Purchase Agreement and the return of the consideration provided, and all costs associated therewith. Alternatively, Plaintiffs are entitled to damages in an amount exceeding the jurisdictional limits of this Court.

In *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex.1998) (per curiam), the supreme court held the plaintiff's claim for negligent misrepresentation failed for lack of independent injury. The court confirmed that benefit-of-the-bargain damages were not available for a negligent misrepresentation and concluded the plaintiff's theory of recovery "did not attempt any distinction between its out-of-pocket damages and the benefit of the bargain." *D.S.A., Inc.*, 973 S.W.2d at 664. Because the plaintiff "in essence asked for the benefit of its bargain," it was not entitled to any recovery under the theory of negligent misrepresentation. *D.S.A., Inc.*, 973 S.W.2d at 664.

Highland's allegation that it has suffered an independent injury and damages, without more, does not raise a fact issue on its negligent misrepresentation claim. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995) (in summary judgment proceedings, once defendant negates element of plaintiff's theory of recovery, plaintiff must present evidence sufficient to raise fact issue). We conclude summary judgment was proper on Highland's negligent misrepresentation claim.

## GARY SINGER'S CRIMINAL BACKGROUND

■ Finally, Highland contends its claims related to Motient's failure to disclose Gary Singer's criminal background should not have been dismissed. We agree. While Motient offered summary judgment evidence regarding Highland's knowledge of Singer's background, Highland offered contradictory evidence regarding how much it knew, and when. We conclude summary judgment was not proper on this issue. *See* TEX.R. CIV. P. 166a (c) (summary judgment should be rendered if no genuine issue as to any material fact).

In conclusion, we sustain Highland's issue in part and overrule it in part. We

conclude summary judgment was proper on Highland's claim for negligent misrepresentation. On all other grounds asserted in Motient's motion for summary judgment, we reverse the trial court's judgment and remand the cause.